LAREY v. BAKER.

If a husband as agent for his wife consulted the defendant as an attorney, and employed him to purchase an outstanding interest in a certain execution against her, and in this employment disclosed to the attorney his whole scheme of compromise and his purpose to purchase another execution against her at a price which the holder of it had agreed to take, and his general purpose to compromise all of his wife's debts, the attorney could not take advantage of the information thus derived so as to purchase the outstanding interest in the first named execution for himself, and could not rightfully purchase the other execution for other persons, although the husband did not employ him to purchase the latter execution; and if he subsequently purchased the latter execution from the persons for whom he had bought it, the trust would attach to it in his hands.

(a) Where an agent or attorney is unfaithful to his trust or violates his instructions, he is not entitled to any compensation.

December 23, 1890.

Attorney and client.   Trusts.   Before R. J. McCamy, Esq., judge *pro hac vice*.   Bartow superior court.   January term, 1890.

Reported in the decision.

AKIN & HARRIS and J. M. NEEL, for plaintiff.

C. D. MCCUTCHEN, for defendant.

SIMMONS, Justice.

Mrs. Larey, formerly Mrs. Deweese, filed her petition against Baker, making in brief the following allegations: On January 25th, 1875, Waitzfelder & Co. obtained a judgment against her; on January 12th, 1876, Meador Brothers obtained a judgment against her. Afterwards she married Larey, and they determined to attempt to compromise all debts outstanding against her, and· he opened negotiations with some of her creditors or their attorneys. The judgment of Waitzfelder & Co. was controlled by Murphey as their attorney, and he claimed to have authority to compromise. Previous to November 1st, 1887, the petitioner, through her husband, made an agreement with Murphey to compromise the Waitzfelder debt for $150. The *fi. fa.* of Meador Brothers had been transferred to Silva and Peacock for considerably less than its face value, and the petitioner had an understanding, through her husband, with Peacock, to compromise his interest in the *fi. fa.* at between $80 and $90. Silva was a stranger to Larey, and he did not know how to approach Silva for a compromise, but intended to open negotiations with him through some attorney or friend. Pending this state of negotiations, Larey was advised by W. C. Baker to call on his brother, J. A. Baker, the defendant, for legal advice concerning the claims, the latter being a lawyer. Acting on this recommendation, Larey did call upon the defendant for advice, and the defendant elicited from·him all the facts and what he had been trying to do, and the arrangements he had made with Murphey and Peacock. In the course of the confidential communication Larey had with the defendant, he told the defendant of the difficulty he was under in ap-

proaçhing Silva for a compromise; and the defendant said he knew Silva well and could easily manage that for the petitioner, and Larey engaged his services to to assist her in getting control of Silva's interest in the *fi. fa.* at a discount, for her benefit, and in furtherance of her general purpose of compromising all of her outstanding debts. She expected to pay him a reasonable fee for his services, and relied upon him as her friend and attorney to assist her in the matter. Baker asked Larey to call again in a few days, by which time he would accomplish what he had engaged to do. Larey did call in a few days, and to his astonishment learned that instead of doing what he had agreed to do, Baker had bought both of the *fi. fas.* for his own benefit; that is, he had bought Silva's interest in the Meador Brothers *fi. fa.*, and had bought the Waitzfelder & Co. *fi. fa.*; against which purchases Larey then and there protested. He bought from Murphey the *fi. fa.* of Waitzfelder & Co. for $150, and had it nominally transferred to Baker & Hall, and shortly afterwards took the transfer of the *fi. fa.* from Baker & Hall to himself. The petitioner offered to pay Baker what he had paid for the two *fi. fas.*, with eight per cent. interest, and a reasonable sum as compensation for his services in securing the *fi. fas.*, though she believes he is entitled to no compensation; but Baker refused to accept the offer, and stated that he would accept nothing less than $450. She tenders him principal and interest of what he claims he paid, and ten dollars for his services. The petition then charges various attempts made by Baker to subject different portions of the petitioner's property, etc. It prays that the defendant be decreed to be the holder of the *fi. fa.* in trust for her; that he be compelled to accept the sum offered by her in satisfaction of the money expended by him for the *fi. fas.*, with interest, and that he be restrained from pressing the *fi. fas.*, and that they may be decreed cancelled.

Baker answered, in substance, that he knew nothing of any negotiations or understanding between the petitioner and Murphey, or between the petitioner and Peacock or Silva. He denied that Larey ever called on him for any advice or counsel in relation to the judgments in question or the compromise, or that he elicited from Larey any facts about the petitioner's case, or what Larey had been trying to do, or the arrangements he had made with Murphey or Peacock; or that Larey had employed him or proposed to employ him, or asked of him any advice or opinion, either as a lawyer or otherwise, in relation to the *fi. fas.* or the compromise of them in any way; or that he gave Larey any opinion as counsel, for he (defendant) was at that time the attorney of Silva. Nor did he undertake in any character to compromise for the plaintiff or assist in any way to compromise the *fi. fas.* or any of them, or betray any confidence reposed in him by the plaintiff or her husband, or take advantage of any confidential communications. He bought Silva's interest, but in so doing he was not guilty of any breach of duty or good faith. Waitzfelder & Co's *fi. fa.* was really bought for Baker & Hall, and the defendant had no interest in the *fi. fa.*, nor any contract or understanding with Baker & Hall for any interest in it; but about a month after, he sold Baker & Hall some property, and agreed to and did take from them an assignment of this *fi. fa.* as a part of the purchase price.

The case went to the jury upon this petition and answer, and the evidence of both parties, which it is unnecessary to set out any further than to say that it was conflicting as to the issues made by the petition and answer. The jury found for the complainant as to the Meador Brothers *fi. fa.*, and for the defendant as to the Waitzfelder & Co. *fi. fa.*; and the plaintiff moved for a new trial upon the several grounds therein set out, which was overruled, and she excepted.

The main contention between counsel in their argument here was, as to whether the court erred in refusing to give in charge to the jury the written request of the plaintiff as set out in the 3d ground of the motion for a new trial, which is as follows: "If you find from the evidence that plaintiff, through her husband acting as her agent and by her authority, employed the defendant, Baker, as her attorney to represent her in negotiating with A. P. Silva for the purchase by her of said Silva's interest in the Meador Brothers *fi. fa.*, and that Baker undertook and agreed to represent her, and that neither plaintiff nor her said husband had any notice of said Baker's employment by said Silva to collect said *fi. fa.* (if you find that he was so employed by Silva), and that plaintiff, in seeking to purchase said Silva's interest in said *fi. fa.*, was doing so in order to carry out a general scheme or plan to buy up or compromise all outstanding *fi. fas.* against her, and that she had at the time of her employment of defendant, Baker, through her husband, already arranged with her other judgment creditors, including R. W. Murphey, the attorney of Waitzfelder & Co., for the purchase of such other *fi. fas.*, including said Waitzfelder & Co. *fi. fa.*, at less than their face value, and that plaintiff's husband, at the time he so employed said Baker, unfolded to him plaintiff's entire scheme aforesaid, and informed him of the arrangement already made with other creditors or their attorneys for purchasing their *fi. fas.*, including said Waitzfelder & Co. *fi. fa.*, and that plaintiff, by her said husband, so employed defendant to assist her in negotiating the purchase from said Silva of his interest in the Meador Brothers *fi. fa.*, in order to further and carry out her general scheme of settling or compromising all outstanding *fi. fas.* against her, and that defendant, Baker, knew of this purpose and undertook to represent plaintiff, to buy from said Silva his interest

in the Meador Brothers *fi. fa.* in aid and furtherance of plaintiff's general scheme aforesaid,—if you find from the evidence that these are facts, then I charge you that defendant, Baker, by such employment came into such fiduciary relation to plaintiff as her attorney that he could not, without plaintiff's knowledge or consent, become the purchaser for himself or others (than plaintiff) of either said Silva's interest in said Meador Brothers *fi. fa.* or of the Waitzfelder & Co. *fi. fa.*, and if you find from the evidence that defendant, Baker, while sustaining the relation aforesaid to plaintiff, purchased for himself from Silva the latter's interest in the Meador Brothers *fi. fa.* at less than its face value, and from Murphey, for Baker & Hall, the Waitzfelder & Co. *fi. fa.* at less than its face value, and that he then, for himself, bought from Baker & Hall said last named *fi. fa.* at less than its face value, plaintiff, on payment to defendant, Baker, of the amount paid out by him for the purchase of said *fi. fas.* with interest on such amounts from the time he so expended the same, would be entitled to have said *fi. fas.* transferred and delivered to her."

Under the pleadings and the facts of this case, we think the court should have given this request in charge to the jury. If Larey, as agent for his wife, consulted Baker as an attorney, and employed him to purchase Silva's interest in the Meador Brothers *fi. fa.*, and in this employment disclosed his whole scheme of compromise to Baker, informing him of his purpose to purchase the Waitzfelder & Co. *fi. fa.*, and the price which Murphey, the attorney, had agreed to take therefor, and of his general purpose to compromise all of his wife's debts, then in our opinion Baker, as his agent or attorney, could not take advantage of the information which he had derived from Larey and purchase the Silva interest in the Meador Brothers *fi. fa.* for himself, and could not rightfully purchase the

Waitzfelder *fi. fa.* for Baker & Hall, although Larey had not employed him to purchase the Waitzfelder & Co. *fi. fa.* If he subsequently purchased it from Baker & Hall, the trust would attach to it in his hands, even if Baker & Hall would have been protected had they not assigned to him.

It was ruled by the House of Lords, in Carter *v.* Palmer, 8 Clark & Finnelly's Reports, 657, that "the employment of counsel as confidential adviser disables him from purchasing for his own benefit charges on his client's estates, without his permission: and although the confidential employment ceases, the disability continues as long as the reasons on which it is founded continue to operate. C., a barrister, who had been for several years confidential and advising counsel to P., and had, by reason of that relation, acquired an intimate knowledge of his property and liabilities, and was particularly consulted as to a compromise of securities given by P. for a debt which C. considered not to be recoverable to the full amount, purchased these securities for less than their nominal amount, without notice to P., after ceasing to be his counsel. *Held*, that C's purchase, while the compromise proposed by P. was feasible, was in trust for P.; and that C. was entitled only to the sum he had paid, with interest according to the course of the court." In the case of Hobday *v.* Peters, 28 Beav. 349, it was held that where a mortgagor consulted a solicitor who turned her over to his clerk to assist her gratuitously, and the clerk, by reason of information derived during such employment, bought the mortgage for less than half the amount thereof, he was a trustee for the benefit of the mortgagor. In the Am. & Eng. Ency. of Law this rule is laid down: "Whenever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes

interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." 1 Am. & Eng. Euc. of L. 375. See also Holman v. Loynes, 53 Eng. Chan. Rep. 270; 1 Story Eq. §§310–11 and notes, 13 ed.; notes to Fox v. Macreth, White & Tud. L. C. in Eq. 228; Perry on Trusts, §203 et seq.

When we first read the above request, we thought the court did right in not giving it in charge to the jury, because it omitted to charge that Baker would have been entitled to reasonable compensation for purchasing the fi. fas.; but upon further consideration of the law and the facts of the case, we reached the conclusion that the omission was proper. We think the law is that where an agent or attorney is unfaithful to his trust, or violates his instructions, he is not entitled to any compensation. In 1 Am. & Eng. Enc. of Law, 397, the rule is laid down as follows: "Where an agent is unfaithful to his trust and abuses the confidence reposed in him by his principal, or where he misconducts himself in the business of his agency, he may be deprived of commission and compensation. Also where he engages in transactions by which he acquires interests or employment adverse to the interests of his principal."

The court erred in not granting a new trial.

*Judgment reversed.*