### EAGAN *et al. v.* CONWAY.

1. Allegations that a deceased person had reached the age of 85 years, that she possessed "little or no memory or will power," that her mental faculties "had become greatly impaired and enfeebled, and [she] was therefore wholly incapable of transacting business, much less . . of making a clear, intelligent, and voluntary disposition of her property," and that she was in the condition thus indicated at the time of making a given contract, amount in effect to an averment that she was at that time mentally incapable of contracting,— certainly of making the contract in question.

2. The failure of a petition containing such allegations to distinctly allege that the person thus referred to remained incapable of making a valid contract until her death is not adequately met by a general demurrer; and in the absence of a special demurrer properly presenting this point, the petition should be dealt with as if it did allege that such condition of incapacity lasted until death.

3. Where one in the condition above indicated executed an instrument purporting to convey to another described realty, and also to vest in him title to certain cash owned by the maker and which, in pursuance of the terms of the instrument, was actually delivered to the other party thereto, the heirs at law of the maker, after her decease, could, when there were no debts against the estate, maintain an equitable action, on the ground of fraud in the procurement of the instrument, to cancel the same, so far as related to the realty; and the court, having taken jurisdiction for this purpose, would be warranted in retaining it over the entire controversy, and to this end adjudging that the heirs recover the money obtained as here indicated from the deceased.

4. Allegations in such a petition that the alleged consideration by which the grantee fraudulently induced the maker to sign the instrument was that the former should maintain, support, board, and care for the maker, and that in point of fact such things were done, do not amount to allegations that the deceased at her death owed for these things, and that consequently the fraudulent party to the contract occupied the relation of creditor to the maker's estate.

5. In such a case it is not essential for the plaintiff to allege that before bringing suit there was an offer to rescind and make restitution; and the petition not being bad in the first instance for failure to make such a tender, an amendment offering to account for the value of any services actually rendered by the defendant to the deceased was not one of which he could justly complain.

6. Where the petition in such a case showed on its face that some of the heirs at law were minors suing by next friend, the point that they were incapable by reason of minority of joining in the suit, or the point that because of such minority the heirs, all together, including both minors and adults, could not maintain the action, ought, if good, to be made by special demurrer.

7. When the allegations of the petition in such a case, taken in their entirety, set forth with sufficient distinctness the alleged fraud and artifices claimed to have been practiced, the petition is not subject to demurrer for vagueness in pointing out the fraud.

Submitted March 1,— Decided April 2, 1902.

Equitable petition. Before Judge Falligant. Chatham superior court. May 7, 1901.

*Garrard & Meldrim*, for plaintiffs in error, cited, on allegations as to mental incapacity: 31 *Ga.* 527 – 8; 62 *Ga.* 548; 111 *Ga.* 821. Suit should be brought by an administrator: Civil Code, § 3353; 1 *Ga.* 381; 12 *Ga.* 278; 69 *Ga.* 600; 70 *Ga.* 604; 104 *Ga.* 253; 112 *Ga.* 533. 89 *Ga.* 151, distinguished. Restitution a condition precedent to suit: 95 *Ga.* 245 (14), 263; 94 *Ga.* 626; 109 *Ga.* 666. Adequacy of consideration: Civil Code, §§ 3659, 3549, 4033; 31 *Ga.* 512, 528. Allegations of fraud: 107 *Ga.* 446; 108 *Ga.* 14 (2); 110 *Ga.* 893.

*Twiggs & Oliver*, contra, cited, on mental incapacity: 31 *Ga.* 512 (7), 530; 41 *Ga.* 271. Right of the heirs at law to maintain the suit: 89 *Ga.* 151–4; 73 *Ga.* 141; 34 *Ga.* 438; 47 *Ga.* 511; 72 *Ga.* 393; 76 *Ga.* 675; 106 *Ga.* 497; 69 *Ga.* 600; 112 *Ga.* 533. Inadequacy of consideration: 6 *Ga.* 524; 1 Story, Eq. § 246. Allegations of fraud: 11 *Ga.* 401; 14 *Ga.* 715; 69 *Ga.* 757; 77 *Ga.* 724 (1); 84 *Ga.* 73 (2); 9 Enc. Pl. & Pr. 692 – 5.

LUMPKIN, P. J. Marie and Leonora Conway, adults, and Vincent and Helen Conway, minors suing by their next friend, brought an equitable petition in Chatham superior court against Michael Eagan and his wife, Mary M. Eagan, making substantially the following case: The plaintiffs are heirs at law of Mary Conway, who died intestate in the city of Savannah on March 9, 1900, and who, about seven months prior to her death, was possessed in her own right of described real estate situated in Savannah, and about $2,-300 in cash. In March, 1899, the defendants, seeking to defraud Mary Conway of her property, induced her to remove to their home to live, and, after doing so, to sign an instrument conveying to them all of her property, real and personal. No money passed as a consideration for this conveyance, the consideration expressed being an obligation on the part of Mary M. Eagan to provide Mary Conway "with board, clothing, medical attention, etc., during her natural life, and to defray the expenses of her last illness, and her funeral expenses." At the time Mary Conway was induced to sign this writing, and for a long time previously thereto, she was very old and infirm, having died at the age of 85 years. She "possessed little or no memory or will power," her mental faculties "had be-

come greatly impaired and enfeebled, and [she] was therefore
wholly incapable of transacting business, much less . . of making
a clear, intelligent, and voluntary disposition of her property," and
she was wholly under the influence and control of the defendants.
The transaction in question was brought about by artifice and un-
due influence on their part, and was a fraud upon Mary Conway
and upon the rights of the plaintiffs. Mary Conway died owing no
debts, and hence administration upon her estate is not necessary for
the recovery of the $2,300. The prayers of the petition were, that
the instrument referred to be canceled, and title to the real estate
therein described decreed to be in plaintiffs; that the defendants be
required to account to the plaintiffs for rents and profits of the re-
alty; that the plaintiffs recover of the defendants $2,300, with in-
terest from the date of the conveyance; for attorneys' fees and
costs, and for general equitable relief. To this petition the defend-
ants filed a general demurrer, and also demurred specially on the
ground that the allegations of the petition charging fraud were
vague and insufficient. The demurrers were overruled. The plain-
tiffs then offered an amendment, in which they set up that the al-
leged consideration of the instrument which they sought to have
canceled was "grossly inadequate and unconscionable"; that al-
though they have no means of ascertaining what expense, if any,
the defendants have incurred in maintaining Mary Conway and de-
fraying her funeral expenses, and are wholly without means to re-
store the alleged consideration of the conveyance, and while they
deny any liability for such expenses, on account of the fraud of the
defendants in procuring the instrument, "they are willing, and
hereby offer, to account to said defendants (in the event of a recov-
ery of the property conveyed or any part thereof) for any expense
which may have been legitimately incurred in the maintenance of
the said Mary Conway or in her burial (in the event it should be
held by the court that such charge against the estate of the said
Mary Conway should be proper in equity and good conscience), and
. . they pray that, when ascertained, this expense account may be
set off against the rents, issues, and profits of the property which
the defendants have received, or the interest on the money which
is held by them." This amendment was allowed by the court, over
the objections of counsel for the defendants that it did not offer to
refund the fruits of the contract sought to be set aside, that such

offer should have been made before the suit was brought ; and that the amendment sought to introduce a new ground of equitable relief, viz., gross inadequacy of consideration. The defendants excepted, assigning error upon the allowance of the amendment and the overruling of the demurrers.

1, 2. While the petition does not allege in express terms that Mary Conway was, at the time of signing the instrument sought to be set aside, mentally incapable of making a valid contract, the language employed authorizes if it does not require that construction, and certainly furnishes good ground for the interference of a court of equity. *Morris* v. *Morris*, 41 *Ga.* 271. Extreme old age, accompanied by loss of memory and will and impaired mental faculties, resulting in an incapacity to transact business or to make a voluntary and intelligent disposition of property, necessarily implies a mental condition incompatible with the ability to make a valid contract of the nature of the one now under consideration. As to whether Mrs. Conway remained in this state of mental incapacity to contract, continuously from the date of the instrument in question until the time of her death, the petition is silent. There was, it appears, in the period between those two dates, ample possibility for the intervention of a lucid interval, during which the deceased might well have ratified and made good the conveyance alleged to have been extorted from her by fraud ; and in that event, the plaintiffs' entire case would fall to the ground. But the omission from the petition of this link in the complete chain of the plaintiffs' case is not such a defect as can be met by the general demurrer filed on the trial below, and, in the absence of a special demurrer making this point, the petition will be treated as if it had specifically set out that the alleged mental incapacity to contract on the part of Mrs. Conway was continuous from the date of the signing of the conveyance to the date of her death.

3. It is urged by counsel for the plaintiffs in error that their demurrer should have been sustained, because, the petition showing on its face that there was an indebtedness to them on the part of the estate of the deceased for board, maintenance, and funeral expenses, an action for the recovery of the personal property could not be maintained by the heirs at law, but must be brought by an administrator of Mrs. Conway's estate. If the suit were being prosecuted solely for the recovery of the money in dispute, this contention might be

meritorious. But, granting that the petition shows an indebtedness by Mrs. Conway to the Eagans for her board and maintenance during the time that she lived with them (which was emphatically denied by the plaintiffs below), the heirs at law could still bring suit in their own name, under the Civil Code, §§ 3081, 3353, to recover the land in controversy; and it is to be borne in mind that this is not solely, or even primarily, a suit to recover money, but is an equitable action brought for the purpose of canceling a conveyance of both land and money. The jurisdiction of a court of equity to cancel, under proper conditions, a deed to real estate, will not be seriously questioned; and it is a well-recognized principle of equity jurisprudence that where a court of chancery has acquired jurisdiction of a cause for any purpose, it will proceed to determine the whole cause, although in so doing it may decide questions which, if standing alone, would furnish no basis of equitable jurisdiction. Bisph. Prin. Eq. § 37. In all of the cases cited in support of the contention of counsel for the plaintiffs in error, the recovery of personal property alone was sought, and hence they throw no light on the question now before us. A case very similar in its facts to the present one is that of *Kent* v. *Davis*, 89 *Ga.* 151, in which it was held that an equitable petition may be brought by heirs at law to set aside a conveyance of both real and personal property, made by the deceased father of the plaintiffs, on the ground that its execution was procured by the fraud of a brother of the decedent. In that case, as in this, it was alleged that the intestate owed no debts, and the ruling there made settles beyond dispute, adversely to the plaintiffs in error, the point now under consideration.

4, 5. But it is urged that the plaintiffs' petition is without equity, because it shows on its face that the Eagans are creditors of Mrs. Conway's estate, and yet does not offer to do equity by restoring to them the fruits of the contract sought to be set aside; and that the amendment by which the plaintiffs avow their willingness to account to the defendants for whatever expense they may have legitimately incurred by reason of the maintenance and burial of Mrs. Conway, out of the money that might be decreed to the heirs at law, came too late, because an offer to refund was a condition precedent to the right to bring suit. If the plaintiffs were seeking to cancel a contract in pursuance of which any money or thing of value had passed from the hands of the defendants to the deceased, tangible

in character and capable of restoration, this would undoubtedly be true. But such is not their case. They deny in positive terms that their intestate's estate is indebted to the defendants for her maintenance or her funeral expenses, and claim, on the contrary, that if the defendants expended anything for these items, it was in pursuance of a scheme to defraud the deceased of her property without consideration. These allegations are far from establishing between Mrs. Conway's estate and the Eagans the relation of debtor and creditor. The plaintiffs were under no obligation to tender to the defendants any money laid out by them in the actual perpetration of an alleged fraud; and their subsequent offer, by amendment, that if the court, in the exercise of its equitable powers, should decide that the defendants were entitled to be reimbursed for any of these expenses, they would account to them for the amount so found, certainly furnishes no ground for the defendants to complain. The so-called fruits of the contract were entirely intangible, and the plaintiffs could not, under the allegations of the petition, make a tender of them, either in money or in kind. Their offer to account was not necessary to authorize the bringing of their suit, and the addition of it to the petition by way of amendment did not in any way affect the validity of their cause of action.

6. In a summary of points raised by the general demurrer, counsel for the plaintiffs in error in their brief allude to the fact, as disclosed by the petition, that two of the plaintiffs are minors suing by their next friend. No reason is given, nor argument presented, to show that on that account the petition set forth no cause of action. A general demurrer goes to the merits of the case as shown on the face of the pleadings. It follows that even if the objection raised by counsel is a good one, it is not properly presented for adjudication, but should have been made by means of a special demurrer duly and properly filed in the court below.

7. While the petition does not set out with minuteness the alleged acts of fraud and conspiracy by which it is claimed that Mrs. Conway was induced to sign the instrument sought to be set aside, the allegations, taken all together, are sufficiently explicit to prevail against a demurrer for vagueness and insufficiency. "It is not necessary that the pleading allege fraud in direct terms; the charge may be sufficiently made by stating the facts from which fraud is necessarily implied." 9 Enc. Pl. & Pr. 694. "Though the charges

of fraud in a bill are not very explicit, yet if, when referentially considered with all the other statements of the bill, they amount to a distinct charge of fraud, the bill should not be dismissed for want of equity." *West* v. *Rouse*, 14 *Ga.* 715. The petition charges that, in pursuance of a fraudulent design, the defendants induced Mrs. Conway to take up her residence with them ; that she was old, infirm, and feeble-minded, and under their influence and control; and that, for a grossly inadequate consideration, they induced her to sign an instrument conveying to them absolute title to all of her real estate and every dollar of her money. The bald statement of these charges amounts to a distinct allegation of fraud. To require of the plaintiffs greater explicitness in such a case as this would in all probability be to demand an impossibility. At all events, the charges of fraud were sufficiently explicit to require, if proved, the interposition of a court of equity, and the court below did not err in refusing to dismiss the petition on demurrer.

*Judgment affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*