SMITH *v.* MERCK.

No. 16879.  JANUARY 12, 1950.

E. C. *Brannon* and *Smith & Stephens*, for plaintiff in error.

*Dunlap & Dunlap, William P. Whelchel,* and *Victor Royal,* contra.

ALMAND, Justice. ■ (a) Where one expressly authorizes another to act for him in a particular transaction, the relation of principal and agent arises. Code, § 4-101. "The word 'agency,' both in law and as used in every-day affairs, may have various meanings. It may refer, and perhaps most often does, to that relation 'created by express or implied contract or by law, whereby one party delegates the transaction of some lawful business with more or less *discretionary* power to another, who undertakes to manage the affair and render to him an account thereof.' *Burkhalter* v. *Ford Motor Co.,* 29 *Ga. App.* 592, 599 (116 S. E. 333), citing 1 Am. & Eng. Enc. Law, 937; *Atlanta Accident Asso.* v. *Bragg,* 102 *Ga.* 748 (29 S. E. 706). The American Law Institute, in defining the word 'agency,' adopted the almost universally recognized definition as follows: 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' Restatement, Agency, § 1." *Washington National Ins. Co.* v. *Savannah,* 196 *Ga.* 126, 129 (26 S. E. 2d, 359).

(b) Loyalty to his principal is the primary obligation of the agent. Code, § 4-205; *Sessions* v. *Payne,* 113 *Ga.* 955 (39 S. E. 325); *Arthur* v. *Ga. Cotton Co.,* 22 *Ga. App.* 431 (2) (96 S. E. 232). The relation of principal and agent is a fiduciary one, and if the agent obtains any advantage or profit out of the relationship to the injury of the principal, he becomes a trustee. *Stover* v. *Atlantic Ice & Coal Corp.,* 154 *Ga.* 228 (1) (113 S. E. 802).

(c) "Where by the act or consent of parties, or the act of a third person or of the law, one person is placed in such relation to another that he becomes interested for him or with him in any subject or property, he is prohibited from acquiring rights in

that subject or property antagonistic to the person with whose interest he has become associated." Code, § 37-708. This section is a codification of the principle of law found in *Larey* v. *Baker*, 86 *Ga.* 468, 474, 475 (12 S. E. 684), which was taken from the enunciation of the principle stated in 1 Am. & Eng. Enc. Law, 375. Where a vendor of land acted upon the advice of an agent or friend and confidential adviser, and made to the vendee a deed instead of a bond for title, and took notes for the deferred payment of the purchase-money, believing under the advice given that the land would be subject to the purchase-money, and the agent or friend thereafter bought the land from the original vendee, equity will relieve the vendor against the effect of the deed, and subject the land to the payment of the purchase-money, although the agent or friend practiced no fraud in inducing the vendor to make the deed. *Hawk* v. *Leverett*, 71 *Ga.* 675. In the opinion the court said: "It will make no difference that, at the time Leverett gave the advice to plaintiff to make the deed to Lane, he acted honestly and believed his advice to be correct, and did not then have in contemplation himself the purchase of the land from Lane. He knew, at the time he did purchase the land from Lane, what advice he had given, and that plaintiff acted upon such advice; his act in purchasing the land from Lane was an act calculated to deprive plaintiff of part, if not the whole, security for the purchase money, which she had taken under his advice. This conduct on his part is fraudulent in law, however honest he may have been when he gave the advice." P. 677.

(d) Fraud will authorize equity to cancel and annul a deed, no matter how solemnly executed. Code, § 37-709. While the terms of an absolute deed cannot be varied by limiting the grantee to a use of the land in a manner not restricted by the express terms of the deed, it may nevertheless be alleged and proved that it was induced by fraud, without denying or varying any of the stipulations or conditions contained in the deed. *Baker County Power Co.* v. *Adkins*, 169 *Ga.* 187 (1) (149 S. E. 910). Where land is owned by two persons, and one obtains a deed from the other to his interest by means of an intentionally false and fraudulent promise to sell the land at its true value and pay off an encumbrance and account for the balance, or failing to

find a purchaser, he will procure a new loan to discharge the present encumbrance, and after obtaining the title he retains · and claims the property as absolutely his own, this transaction by which the ownership is obtained is such a fraud as will entitle the grantor to have the deed canceled. Equity will afford relief, not because of the mere breach of a verbal promise, but because of the fraud of the grantee in procuring an absolute deed to be made to him upon his false and fraudulent representation and promise that he will use the title for the grantor's benefit. *Jones* v. *McElroy,* 134 *Ga.* 857 (1, 2) (68 S. E. 729). Where the allegations of a petition show that the promise of the grantee was the consideration inducing execution of a deed, and that it was made with the present intention on the part of the grantee not to comply with it, such petition sets forth a cause of action for cancellation. *Johnson* v. *Johnson,* 152 *Ga.* 300 (110 S. E. 211); *Williford* v. *Swint,* 181 *Ga.* 44 (181 S. E. 227); *Pantone* v. *Pantone,* 202 *Ga.* 733 (2) (44 S. E. 2d, 548).

(e) As a general rule, a petition in equity which seeks to cancel a deed representing a conveyance of property, but which does not allege the return or the offer to return the consideration prior to institution of the suit, is demurrable. *Cabaniss* v. *Dallas Land Co.,* 144 *Ga.* 511 (87 S. E. 653); *Williams* v. *Fouché,* 157 *Ga.* 227 (121 S. E. 217). This rule is based on the equitable maxim that he who would have equity must do equity. Code, § 37-104. There are exceptions to this rule. *Bowden* v. *Achor,* 95 *Ga.* 243 (14) (22 S. E. 254); *Timmerman* v. *Stanley,* 123 *Ga.* 850 (5) (51 S. E. 760)·. A party is not obliged to return that which he will be entitled to retain, as a condition to a cancellation; so, if a ·plaintiff has received no more than he was entitled to, his offer to account for the same in adjustment of the differences between the parties sufficiently meets the requirement that he who seeks equity must do equity. *Collier* v. *Collier,* 137 *Ga.* 658 (3) (74 S. E. 275); *Williford* v. *Swint,* 181 *Ga.* 44 (2) (supra). As to inability on account of poverty to restore or offer to restore, and an offer to pay whatever may be found due, as coming within the exception to the general rule, see *Bell* v. *Weyman,* 99 *Ga.* 273 (25 S. E. 636); *Mayer* v. *Waterman,* 150 *Ga.* 613 (3) (104 S. E. 497); *Wynne* v. *Fisher,* 156 *Ga.* 656 (2) (119 S. E. 605).

(f) It is insisted that the court erred in allowing the amendment to the petition, objected to by counsel for the defendant, and in overruling the general demurrer to the petition as amended. We have, in the statement of the case, set out fully the allegations made in the petition as amended, and they need not be repeated here. We are of the opinion that, in the light of the principles of law and the authorities cited above in this division of the opinion, the court properly overruled the general demurrer. In addition to the cases cited, see *West* v. *Rouse,* 14 *Ga.* 715; *Eagan* v. *Conway,* 115 *Ga.* 130 (41 S. E. 493); *Wimberly* v. *Ross,* 152 *Ga.* 258 (109 S. E. 500); *Elliott* v. *Marshall,* 179 *Ga.* 639 (1, 2) (176 S. E. 770). We have carefully examined all the authorities cited by counsel for the defendant on the contention that the amendment to the petition failed to set forth any legal or equitable reason why the plaintiff should be excused from restoring or offering to restore the consideration received; and without here analyzing these cases, it is sufficient to say that in our opinion the facts of these cases are so different from those of the present case that the principles enunciated in such cases, correct as they are, have no application here. The court did not err in allowing the amendment to the petition, nor in overruling the general demurrer to the petition as amended.

Ground 4 of the amended motion for a new trial assigns error on the court's refusal to grant the defendant's motion for a mistrial. While the witness E. C. Brannon was testifying on behalf of the defendant, on cross-examination by counsel for the plaintiff, the witness was asked whether or not he had had any conversation with Pethel "regarding this deed to Ed Smith." Counsel for the defendant objected to the question and proof of any conversation between the witness and Pethel. Thereupon the following colloquy took place in the presence of the jury:

Mr. Royal (of counsel for the defendant): "We intend to connect it up and show that Mr. Brannon didn't have any confidence in the deed he drew up from Mrs. Merck to Ed Smith.

"The Court: 'Confidence—in what way?'

"Mr. Royal: 'That the deed wasn't any good.'

"The Court: 'For what reason?'

"Mr. Royal: 'If you will let me go ahead and I don't connect it up—it can be ruled out.'

"The Court: 'No sir—I would like to know if you are trying to show Mr. Brannon knew the deed wouldn't stand up, and if so, what the grounds were.'

"Mr. Royal: 'We contend that he told Mr. Pethel that the deed wasn't worth a nickel.'"

A motion for mistrial was thereupon made, because the last statement of Mr. Royal was claimed to be prejudicial and made for the purpose of misleading and prejudicing the jury; it being contended that the statement of counsel made in the presence of the defendant was prejudicial to the rights of the defendant because the witness Brannon was the scrivener of the deed from the plaintiff to the defendant, the subject-matter of the litigation, and the effect of such statement was to convey to the jury the impression that such deed was believed to be infected with infirmity and not a valid instrument, and the statement was surreptitiously made by counsel in order to convey prejudicial matter to the jury. In this ground, it is further contended that this error was magnified later on in cross-examination of the witness Brannon, when counsel for the plaintiff asked the witness if he did say anything regarding the deed to Pethel, and the witness answered that he had a conversation with Pethel, "but I would consider it confidential between attorney and client."

This court, in *Woodward* v. *State*, 197 *Ga.* 60 (28 S. E. 2d, 480), said that there are two kinds of improper statements made by counsel in the presence of the jury: one that could be corrected by action of the judge, and another where the statement is so inflammatory and prejudicial that its effect can not be eradicated from the minds of the jurors. In that case, where the defendant was on trial for murder, evidence had been introduced to the effect that the homicide took place near a certain room in a hotel. Shortly before the time of the homicide loud talking had been heard in that room. A police officer testified that some time later during the night of the homicide he and another police officer waited near the room to apprehend the person who occupied the room when he returned, and that a man by the name of Holzman entered the door and was arrested by the officers. At this point, counsel for the accused objected to the testimony, and the assistant solicitor-general gave his reasons why the court should admit the testimony; and when the court inquired of

counsel as to the extent he wished to go in questioning the witness, he stated: "I want to show that they arrested him and carried him down, and he was released on a hundred-dollar bond the next day." Counsel for the accused made a motion for a mistrial, and this court held that the trial judge properly overruled the motion. In the opinion it was said: "There was nothing prejudicial to the accused in the statement made to the court by the assistant solicitor-general. The court rejected the proposed evidence. It was nothing more than a reply to a question by the court as to the extent of the proposed testimony he wanted to produce. The colloquy was between court and counsel, limited to the subject-matter of the admissibility of evidence, and while the evidence was rejected, the statement of the assistant solicitor-general was not inflammable, or injurious to the accused." P. 66.

From the record it appears that counsel for the plaintiff sought on cross-examination of the witness to ascertain whether he had a conversation with a person by the name of Pethel, and on objection of counsel for the defendant a colloquy took place between counsel for the plaintiff and the court. The court, in seeking to ascertain the reason why counsel thought the evidence was admissible, brought from counsel the statement, "We contend that he told Mr. Pethel that the deed was not worth a nickel." The chief ground upon which the defendant contends that the court erred in not declaring a mistrial is that the effect of the statement of counsel quoted above was to convey to the jury trying the case the impression that said deed was believed by the scrivener to be infected with such infirmity as not to be a valid instrument. We hold that the court did not err in overruling this ground of the motion for a new trial. The objection to the remark of counsel for the defendant took place in a colloquy between the court and counsel. The court refused to allow the witness to answer whether he had a conversation with Pethel. The statement by counsel for the plaintiff, that "We contend he told some third person that the deed to Pethel was not worth a nickel," was not a statement of fact or an assertion that, if the witness was allowed to go into the conversation, he, the witness, would state that he made such a statement as contended. We cannot say that the defendant was prejudiced or hurt thereby.

■ Ground 5 complains that the court erred in giving the following charge to the jury: "As a general rule, the injured party must return or offer to return the consideration received for the contract. And that is true in this case, gentlemen, unless you believe, by a preponderance of the evidence, that the plaintiff was unable through poverty or other reason, to restore to the defendant the benefit she received prior to the time of filing her petition."

It is asserted that the charge was erroneous and not sound as an abstract principle of law; that it was confusing and misleading, in that the jury, by the use of the words "or other reason," were not given any definite limitation of what might be considered a reason sufficient in law to excuse a tender, and left the jury to apply their own standard of what might be a sufficient excuse for not making a tender.

The use of the words "or other reason" by the court, after instructing the jury that the plaintiff was required to return or offer to return the consideration received under the contract unless they believed by a preponderance of the evidence that through poverty she was unable to do so, while inapt, and not justified under the pleadings, was not such error as demands the grant of a new trial. The evidence disclosed that, in the transaction between the plaintiff and the defendant concerning the conveyance of the property, the plaintiff did not receive directly from the defendant any benefit or consideration at the time the conveyance was made, and that whatever benefits she received from the defendant were services rendered by the defendant, or monetary advances by the defendant, after the deed was made. The deed recited a cash consideration, but the only money that the plaintiff received was $3000, which the defendant obtained from the proceeds of a loan on the property that the plaintiff had conveyed to him, and this money had been loaned by Gilstrap by virtue of a security deed executed by the defendant to Gilstrap, which, if the plaintiff's contentions were correct, was in equity and good conscience the property of the plaintiff. The evidence further shows that the defendant had obtained $1000 from Pethel by virtue of a second loan deed the defendant had executed to Pethel conveying the same property. Under the evidence introduced by the defendant, the jury would

have been authorized to find that the defendant, either by reason of services rendered, payment of bills, or advancements of money, was entitled to a return of several hundred dollars in money, and by their verdict they allowed the defendant a credit of $500 in this regard, and by decree of the court title to the property was vested in the plaintiff, subject to both the loan deeds which the defendant had executed to third parties. The jury thereby did not excuse the plaintiff from making restoration by reason of her poverty, "or other reason." The error in the charge, if any, was harmless to the defendant.

■ On the general grounds of the motion for a new trial, counsel for the defendant insist that (a) the plaintiff failed to prove her case as laid; and (b) the evidence showed a valid sale of the property by the plaintiff to the defendant. We have set out substantially the evidence in the statement of facts, and will not repeat it here. We have carefully read and reread the evidence in the record, and cannot say that there is not some evidence to support the verdict. Our function is to review the sufficiency of the evidence, and not to determine its weight. Though the evidence might have authorized a different verdict (*Stephenson v. Meeks*, 141 *Ga.* 561 (4), 81 S. E. 851), or the verdict is supported by only slight evidence (*Ala. Great So. R. Co. v. Brock*, 141 *Ga.* 840 (2), 82 S. E. 225), or the evidence is conflicting or preponderates against the verdict (*Slaton v. Fowler*, 124 *Ga.* 955 (1), 53 S. E. 567), where no material error of law appears, this court will not disturb the trial judge's judgment in overruling the motion for new trial. As was said in Lavender *v.* Kurn, 327 U. S. 645, 653 (66 Sup. Ct. 740, 90 L. ed. 916): "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function ·

is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The jury, sitting as triors of the facts, hold the scales that determine the weight of the evidence, and in making such determination they pass on the credibility of the witnesses and adjust conflicts in the testimony, and resolve doubts, and thereby determine which side of the scales, that of the plaintiff or that of the defendant, has the greater weight or preponderance. They are the chemists who distill the facts in order to find the truth. In reviewing their findings, we are not permitted, as judges, to substitute what our judgment might have been if we had participated as jurors trying the case, where all we have before us is the stenographic report of the trial, and nothing of the warm human drama of the actual trial. The system of trial by jury where disputed legal rights of human beings are settled by the verdict of twelve men, chosen from a list of upright and intelligent men from the vicinage of the parties to the controversy, has been proven by its use over the centuries as the best method in arriving at human justice.

Counsel for the defendant insist that the rulings of this court in *Grice* v. *Grice*, 197 *Ga.* 686 (30 S. E. 2d, 183), are controlling here. We have examined that decision, which was not by a full bench, and find that the facts therein were quite different from those in the case at bar. In that case, the plaintiff sought to cancel a deed to the defendant on the ground that the defendant had fraudulently represented to the plaintiff that the bank would not make a loan to a woman in the health the plaintiff was then in, and under a promise that when the loan was obtained the defendant would reconvey said property to the petitioner, and upon the additional theory that the deed was void for the reason that no consideration was paid. In holding that the count of the petition which contained these allegations was not sufficiently proven to authorize a verdict for the plaintiff on that count of the petition, this court pointed out that the plaintiff did not rely on the promise to convey as a contractual obligation, because she did not pray either for specific performance or for general relief, and that the verdict on that behalf could only be sustained by evidence that the original defendant had fraud-

ulently represented that the bank would not make a loan to a woman in the health petitioner was then in. It was held that there was no evidence in the record to show that such statement was false. In that case, it distinctly appeared that the plaintiff was fully cognizant of the type and character of the deed she executed, and it does not appear that the defendants or either of them occupied a confidential relationship of principal and agent. In the case at bar, there is evidence that the plaintiff, at the time she executed the deed, did so for the sole purpose of obtaining money to pay off a prior loan deed, and the jury were authorized to find that the deed was made to the defendant, not by reason of a sale, gift, or upon consideration of the defendant supporting the plaintiff in the future.

Finding no substantial error of law in the record, the order of the trial judge overruling the motion for a new trial as amended is affirmed.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*