## PHILLIPS v. PHILLIPS.

1. Failure of the petition to allege that there was no administration upon the estate of the deceased, or that there was administration and that the administrator had assented to the plaintiff's bringing this suit, was a proper subject for special demurrer; and a judgment overruling a general demurrer for failure to allege a cause of action will not be reversed.

2. As against one who by fraud during the lifetime of the deceased induced the latter to execute to him a deed to realty, equity will afford the widow, as such personal representative, a remedy to cancel and set aside

<hr>

Appeal and Error, 3 C. J. p. 746, n. 15; p. 819, n. 26; p. 823, n. 28; 4 C. J. p. 1029, n. 30.

Cancellation of Instruments, 9 C. J. p. 1170, n. 94; p. 1180, n. 63; p. 1225, n. 82; p. 1233, n. 87; p. 1258, n. 63, 64; p. 1259, n. 70.

Deeds, 18 C. J. p. 236, n. 75, 76.

Descent and Distribution, 18 C. J. p. 908, n. 34.

Evidence, 22 C. J. p. 199, n. 36; p. 216, n. 66.

Executors and Administrators, 23 C. J. p. 1004, n. 88, 89.

Judgments, 34 C. J. p. 438, n. 63; p. 473, n. 80; p. 474, n. 81; p. 491, n. 33.

Pleading, 31 Cyc. p. 271, n. 13.

Trial, 38 Cyc. p. 1601, n. 52; p. 1602, n. 58; p. 1608, n. 78, 83; p. 1612, n. 13; p. 1615, n. 22; p. 1632, n. 10; p. 1703, n. 75; p. 1704, n. 76.

the deed and incidentally to preserve and apply rents issuing from such realty. Upon like principle equity will afford the widow as such personal representative a remedy to cancel and set aside a judgment obtained against her deceased husband during his lifetime, upon the ground of fraud or other sufficient cause.

3. If a person designs to procure the property of a husband who is so emaciated and weak from disease as to have no will power, and, by false representations as to his wife's feelings and disposition towards him, overcomes his will power and induces him to execute a promissory note for a large sum, purporting to be for value, when in fact there is no consideration, and thereafter institutes an action upon the note against the maker (husband) in a court of competent jurisdiction at a time when the maker is so enfeebled bodily and mentally by disease as to be unable to know what he is doing or to defend the suit, and the payee of the note, knowing his condition, prosecutes the suit to judgment while the maker continues in such condition, without informing the court thereof, such conduct upon the part of the payee will amount to fraud as against the maker of the note.

4. The objection to testimony of certain statements by the deceased to the witness, on the ground that it was "a self-serving declaration in his favor," was without merit. Other grounds of objection alleged in the motion for new trial, but not stated to the court when the testimony was offered, can not be considered.

5. Other testimony by the same witness, of statements by the deceased made out of the presence of the defendant, was erroneously admitted over the objection presented.

6. Where the court charged the jury that they' would have the pleadings and could refer to them for more specific and detailed statement of the respective contentions of the parties, if the defendant desired a more specific statement by the court of his contentions it devolved upon him to make an appropriate request.

7. In order for a widow to be the personal representative of her deceased husband who died leaving no lineal descendants, in the sense that she may sue or be sued as the representative of the estate, it is essential that at the time of the institution of the suit there be no outstanding debts against the estate. If the widow sues as the personal representative of the estate, and on the trial the evidence discloses that the estate owed debts at the time of the institution of the suit, the action must fail. It would not suffice that the debts were subsequently paid. In view of the pleadings and the evidence, certain instructions excepted to were not properly adjusted to the case; and the court erred in so far as there was an omission to charge the legal principles just stated.

8. There was no error in refusing a request for instruction which was argumentative and which would have tended to confuse the jury and cause them to disregard the question of undue influence alleged as ground for the equitable relief prayed.

9. On the subject of undue influence, the defendant was entitled to have given in charge the language of his requested instruction, which was properly adjusted to the pleadings and the evidence.

10. The defendant's requested instruction on the plaintiff's contention that the acts of the defendant were to defeat her of her legal right as the

sole heir at law of her husband was not properly adjusted to the pleadings.

11. The instruction that if parties were legally married, what induced them to the consummation of the marriage does not affect their marital rights, had reference to alleged false statements by the defendant to the husband as to the motive with which the plaintiff married him, and was not calculated to injure the defendant.

No. 5451. MARCH 3, 1927.

Equitable petition. Before Judge Pomeroy. Fulton superior court. March 26, 1926.

*Jackson & Moore* and *Morris, Hawkins & Wallace,* for plaintiff in error.

*J. Caleb Clarke* and *E. F. Childress,* contra.

ATKINSON, J. On July 16, 1923, T. E. Phillips executed a promissory note, due one day after date, to Frank P. Phillips for $28,862. Suit was instituted on the note in the city court of Atlanta, a judgment was taken by default at the September term, 1923, and a fi. fa. was duly issued on the judgment. On February 12, 1924, T. E. Phillips executed three separate deeds to F. P. Phillips, purporting to convey described parcels of realty. The parcels referred to in each deed were different, but the same consideration was expressed in all of them, which was that the conveyance was for "the settlement of" the above-mentioned fi. fa., "the amount due and owing, . . including principal, interest, and cost, to this date being $30,197.73;" also "for services that are to be rendered by party of the second part, and expenses that may be incurred by party of the first part, and funeral expenses of the party of the first part, to be paid after the death of party of the first part by party of the second part, to wit: That said party of the second part agrees, as an additional consideration as part payment for the lands hereinafter described, that he, party of the second part, will, from this date on throughout the lifetime of and until the death and burial of said party of the first part, pay as follows: All necessary living expenses of any kind or character, incurred during the lifetime of said party of the first part, and will also expend the sum of five hundred (500.00) dollars as funeral expenses for said party of the first part after his death." The land was of the value of $40,000 or more. The grantee took possession of the land and collected certain rents arising therefrom. The grantor died intestate, March 15, 1924. Mrs. Manuel Phillips, on May 9, 1924, instituted an action against Frank P. Phil-

lips, to cancel the judgment and the deeds, for a receiver to collect the rents, and for injunction to prevent the defendant from selling or incumbering the property. The petition as amended, together with the attached exhibits, alleged all that is stated above, and substantially the following: Petitioner was married to said T. E. Phillips in 1921. Shortly thereafter she discovered that he was afflicted with acute tuberculosis, and the disease progressed rapidly and caused his death on the date above mentioned. Petitioner nursed and cared for him constantly. F. P. Phillips was his brother, and formed and executed a scheme to prejudice the mind of T. E. Phillips against petitioner, and to obtain for himself all his property. With such objects in view F. P. Phillips, in June, 1923, commenced a series of visits to the room of T. E. Phillips and private conferences with him. On these occasions he would falsely tell T. E. Phillips that petitioner did not love him; that she married him only for his money, and would marry again and spend his money on some other man; that she desired him to die, so that she could marry another man and enjoy his property; that she only married him thinking he would die quickly and· she would get his money and property; that she was only waiting for him to die, and wanted him to die; that F. P. Phillips was the only member of his family who loved him; and that he would take care of him and see that his property would be taken care of and not squandered by petitioner's next husband. Such statements were so frequently made when T. E. Phillips was so greatly afflicted in body and mind that he fell under the influence and control of F. P. Phillips, and without any cause became possessed of "a dislike and distrust" for petitioner. So on July 27, 1923, while T. E. Phillips was lying in bed with a high fever, in the last stages of tuberculosis, in a helpless condition, unable to know what he was doing, and unable to give his property away, F. P. Phillips directed, coerced, and influenced him to sign the above-mentioned note, when in fact he did not owe F. P. Phillips anything. When the suit was filed T. E. Phillips "was a dying man in bed, and had no mental capacity to know what was in the suit and no mental capacity to employ a lawyer to answer said suit," facts that were known to F. P. Phillips; and the institution of the suit and obtainment of the judgment was a fraud upon the court. When the deeds were executed T. E. Phillips was·so weakened in body and

mind that he was unable to know what he was doing and unable to contract, and they were executed under the direction, influence, and control of said F. P. Phillips. After the deeds were executed T. E. Phillips drove petitioner from his home. Petitioner is the widow and sole heir at law of T. E. Phillips; there were no debts against the estate; the property described in the deeds and the money derived from the rents is in law and equity her property; and there is no necessity for administration upon the estate. It was not alleged that there was no administration, or that there was administration and that the administrator had consented to the petitioner bringing the suit. General and special demurrers to the petition were overruled. Exceptions pendente lite were duly filed. After the introduction of evidence and charge of the court, a verdict was returned for the plaintiff. The defendant's motion for a new trial was overruled, and he excepted.

1. Where a widow as sole heir at law instituted an equitable suit to cancel a judgment rendered against her husband, and a deed to realty executed by him in settlement of the judgment, and for appointment of a receiver to hold rents collected by the grantee named in the deed, a judgment overruling a general demurrer stating that the petition fails to allege a cause of action will not be reversed on the ground that the plaintiff failed to allege that there was no administration upon the estate of the deceased, or that there was administration and that the administrator had assented to the plaintiff's bringing the suit. A question of that character is a proper subject for special demurrer. *Yopp* v. *Atlantic Coast Line Railroad Co.*, 148 *Ga.* 539 (2) (97 S. E. 534).

2. Where a man dies leaving an estate and a widow and no lineal descendants or debts, the widow is his sole heir and may become the personal representative of the estate without formal administration. Civil Code (1910), § 3931, par. 1. As against one who by fraud during the lifetime of the deceased induced the latter to execute to him a deed to realty, equity will afford the widow, as such personal representative, a remedy to cancel and set aside the deed and incidentally to preserve and apply rents issuing from such realty. *Eagan* v. *Conway,* 115 Ga. 130 (3) (41 S. E. 493); *Frizzell* v. *Reed,* 77 *Ga.* 724. Upon like principle equity will afford the widow as such personal representative a remedy to cancel and set aside a judgment obtained against her deceased husband during

his lifetime, upon the ground of fraud or other sufficient cause. A judgment of a court of competent jurisdiction may be set aside in equity on the ground of fraud in its procurement. Civil Code (1910), §§ 4584, 4585, 5965; *Wade* v. *Watson,* 133 *Ga.* 608 (66 S. E. 922); *Gulf Refining Co.* v. *Miller,* 151 *Ga.* 721, 725 (108 S. E. 25).

3. If a person designs to procure the property of a husband who is so emaciated and weak from disease as to have no will power, and, by false representations as to his wife's feelings and disposition towards him, overcomes his will power and induces him to execute a promissory note for a large sum, purporting to be for value, when in fact there is no consideration, and thereafter institutes an action upon the note against the maker (husband) in a court of competent jurisdiction at a time when the maker is so enfeebled bodily and mentally by disease as to be unable to know what he is doing or to defend the suit, and the payee of the note, knowing his condition, prosecutes the suit to judgment while the maker continues in such condition, without informing the court thereof, such conduct upon the part of the payee will amount to fraud as against the maker of the note. *Eagan* v. *Conway,* supra. The special demurrers in this case were sufficiently met by amendment. The petition was sufficient as against the grounds of general demurrer, and the judge did not err in overruling that demurrer or the subsequent oral motion to dismiss the petition.

4. A witness testified: "He [the deceased] was a man that talked very freely about his business affairs. He told me of his first transaction to go west on account of his health. He said he was the only one in his family that ever made any money, that Frank Phillips [defendant] had failed twice in business, and that he had reinstated him, and when he went west he contracted flu shortly after." The only objection that was urged and stated to the court to the admissibility of this testimony was that "it is a self-serving declaration in his favor." Several other reasons were assigned in the motion for new trial as grounds for objection to the evidence. The ground of objection that was stated to the court is without merit. The other grounds alleged in the motion, which were not stated to the court as grounds of objections to the testimony, will not, under the rulings of this court, be considered.

5. The witness also testified: "He [the deceased] told me of

his transactions about going west on account of his health, and he said he was the only one in his family that ever made any money, that Mr. Frank Phillips had failed twice in business, that he had reinstated him, and when he went west he contracted flu shortly after that, he had flu shortly after arriving at his destination in the west, and, having tuberculosis, he thought his chances for recovery were less, and he carried some eight or ten thousand dollars worth of notes, I am not positive, for Mr. Frank Phillips; and thinking that he was going to die, he tore them up; he didn't want any debts hanging over his brother." It elsewhere appeared in the testimony of this witness that the statements were not made in the presence of the defendant. It was erroneous to admit this testimony over the objection that it was made out of the presence of the defendant, and was hearsay.

6. The defendant contended, by his pleadings and evidence, that a part of the consideration for the deed was that the defendant should pay all the living expenses of the grantor until he should die, and also a stated amount for funeral expenses at his death. In his instructions to the jury the court did not refer expressly to this contention, but, after stating several contentions of the defendant, stated: "You will have the pleadings out with you, the plaintiff's petition and amendment thereto and the defendant's plea and answer, to which you may refer as often as you like for a more specific and detailed statement of the respective contentions of the parties." If the defendant desired a more specific statement of his contentions, it devolved upon him to make an appropriate request.

7. The court charged the jury: "If you believe from the evidence, that these papers were obtained (that is the note, the judgment, and the deeds) on account of the fraud complained of in the plaintiff's petition, you would be authorized to find for the plaintiff, that the title to the property is in her as sole heir at law of her deceased husband." Also, that the plaintiff "sets forth in her petition and amendment thereto the various acts of fraud which she alleges defendant practiced in order to induce the execution of this note, the rendition of the judgment and the execution of the deeds, and asks that these papers—the note—be set aside and canceled, that the judgment and the deed be set aside and be declared null and void, and that the property of T. E. Phillips be

decreed in her." This charge was not properly adjusted to the evidence, there being no evidence that there were no debts outstanding against or due by the estate of the plaintiff's husband at the time of the institution of the suit.

It is provided in the Civil Code (1910), § 3931, par. 1: "Upon the death of the husband without lineal descendants, the wife is his sole heir, and upon the payment of his debts, if any, may take possession of his estate, without administration." In order for a widow to be the personal representative of her deceased husband who died leaving no lineal descendants, in the sense that she may sue or be sued as the representative of the estate, it is essential that at the time of the institution of the suit there be no outstanding debts against the estate. *Johnson* v. *Champion,* 88 *Ga.* 527 (15 S. E. 15); *Jackson* v. *Green,* 123 *Ga.* 254 (51 S. E. 284); *Demmons* v. *Booker,* 128 *Ga.* 83 (57 S. E. 108); *Willis* v. *Bonner,* 136 *Ga.* 720 (71 S. E. 1048); *Jackson* v. *Butts,* 148 *Ga.* 312 (3) (96 S. E. 630); *Tidwell* v. *Garrick,* 149 *Ga.* 290 (99 S. E. 872). If the widow sues as the personal representative of the estate, and on the trial the evidence discloses that the estate owed debts at the time of the institution of the suit, the action must fail. It would not suffice that the debts were subsequently paid. *Jackson* v. *Green,* supra. This ruling is in accord with the decision in *Eagan* v. *Conway,* supra, decided upon demurrer to a petition which alleged that the estate owed no debts. The decision does not conflict with the ruling in *Yopp* v. *Atlantic Coast Line Railroad Co.,* supra, decided also on demurrer, and holding that the question was not raised in that case by a general demurrer. Grounds numbered 7 to 12, inclusive, of the amended motion for a new trial complain of the omission to charge without request, and of refusals to charge duly presented in writing, the principle above stated. The court erred in so far as there was a failure to charge the principle above stated. It was ruled in *Greenfield* v. *McIntyre,* 112 *Ga.* 691 (38 S. E. 44): "Under the provisions of the code of this State, before heirs at law of a deceased intestate can recover land which had belonged to the estate of such intestate, they must allege and prove that there was no administration on the estate, or that the administrator, if there was one, assented to their bringing suit." The petition did not pray to set aside the note, and the charge stating that the plaintiff sued to set aside the note described

in the petition was not properly adjusted to the pleadings. Neither did the petition allege that the defendant exercised duress either by imprisonment or threats, or that he consummated any fraud by signs or tricks or through agents employed to deceive, or that the institution of the suit in the city court was a fraud against the plaintiff. In these circumstances the instructions complained of in the fourth, fifth, and sixth grounds of the motion for new trial were not properly adjusted to the pleadings. Under the facts of this case, however, these portions of the charge would not require a reversal. *Hubbard* v. *Rutherford*, 148 *Ga.* 238 (5) (96 S. E. 327).

8 The court was requested to charge: "Gentlemen of the jury, I charge you that it is contended by the plaintiff in this case, in part, as follows: 'Your petitioner shows that in June, 1923, T. E. Phillips owned, unincumbered and free from all debt and liens, the property described and marked Exhibit A and made a part of this petition. At this time he did not owe F. P. Phillips one cent, but that F. P. Phillips owed petitioner's husband two per cent. of the net profits of all the insurance business F. P. Phillips was engaged in, and that F. P. Phillips knew this; but seeing and knowing that T. E. Phillips was in a weakened condition in body and mind, and easily persuaded, F. P. Phillips did unduly influence him, and made him execute a note for twenty-eight thousand, eight hundred, sixty-two dollars, due one day after date, and when F. P. Phillips did this his brother was lying in bed with fever which influenced his mind and increased this unnatural attitude against your petitioner.' (Plaintiff amends paragraph seven (7) of said petition by alleging) 'That on the 27th day of July, 1923, T. E. Phillips was lying in bed with a high fever, unable to contract, unable to give away his property, and unable to know what he was doing; this was brought about by tuberculosis, he being in the last stages at this time; and that while he was in this helpless condition, physically exhausted and mentally unable to know what he was doing, F. P. Phillips had him sign a note for twenty-eight thousand, eight hundred, sixty-two dollars, when T. E. Phillips did not owe him a cent and had never owed him a cent, but was made for the sole purpose of dishonestly, unfairly, and fraudulently obtaining this note for the purpose of getting the property of T. E. Phillips.' Gentlemen, you will observe from that part of plain-

tiff's petition, as originally filed and as amended, that plaintiff's contentions are—to use her exact words—'at this time, he did not owe F. P. Phillips one cent.' That, gentlemen, is plaintiff's contention, that there was no consideration in any sum or amount for the note described in plaintiff's petition that the court has just read in your hearing. I charge you, in this connection, gentlemen, that before you can find for the plaintiff, you must believe from the evidence that at the time of the making of the note referred to in plaintiff's petition that T. E. Phillips did not owe F. P. Phillips any sum or amount whatever. In this connection I charge you, gentlemen, that if you should find from the evidence that there was any indebtedness on the part of T. E. Phillips for which the note I have just referred to was executed by T. E. Phillips and delivered to F. P. Phillips, then I charge you, gentlemen, that there would be a consideration for the note given by T. E. Phillips to F. P. Phillips, and that plaintiff could not prevail in her suit on that theory of the case, to wit, the total want of consideration for the making of the note. Whether there was or was not indebtedness on the part of T. E. Phillips to F. P. Phillips at the time of the making of the note described in plaintiff's suit is a question for you to determine from the evidence in this case, under the rules of law given you in this charge." This request was argumentative, and, if given, would have tended to confuse the jury and to cause them to disregard the question of undue influence alleged in the petition as ground for the grant of the equitable relief prayed.

9. The court was requested to charge: "I charge you, gentlemen, that one theory of plaintiff in this case is 'that T. E. Phillips (the deceased) was in a weakened condition in body and mind and easily persuaded, and that F. P. Phillips did unduly influence him and made him execute a note,' the note described in plaintiff's suit. I charge you, gentlemen, that if you find from the evidence in this case that the relationship between T. E. Phillips and F. P. Phillips was confidential, then I charge you, gentlemen, that the law of undue influence governing this case is as follows: 'A person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence. Such influence that is obtained by flattery, importunity, superiority

of will, mind, or character, which would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse. Such is the kind of influence which the law condemns as undue.'" The statement of law as embodied in the request was correct (*DeNieff* v. *Howell*, 138 *Ga.* 248 (6), 75 S. E. 202; *Burroughs* v. *Reed*, 150 *Ga.* 724, 105 S. E. 290; *Dean* v. *Littleton*, 161 *Ga.* 651, 131 S. E. 507), and the request was properly adjusted to the pleadings and the evidence. In this connection see *Hubbard* v. *Rutherford*, supra. On this subject the court charged: "Undue influence which overturns an otherwise legal contract is the exercise of sufficient control over the person whose act is brought in question to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." The defendant was entitled to have the charge in the language of the request.

10. The court was requested to charge: "I charge you further, gentlemen of the jury, on plaintiff's contentions in her petition that the acts of defendant were 'to defeat your petitioner (the plaintiff) and of her legal rights as the sole heir at law of said T. E. Phillips.' That the plaintiff in this case could not become an heir of her deceased husband, if you find from the evidence that the deceased T. E. Phillips was plaintiff's husband, in that under the laws of Georgia 'no inheritance can vest, nor any person be the actual, complete heir of another till the ancestor is dead. And, I charge you, gentlemen, that under the law of Georgia, that no prospective heir can be defrauded out of his or her inheritance by any act or deed done by any one in his lifetime, from whom such living person might be an heir after death. In other words, there is no law in Georgia that allows one person in life being the heir of another person still in life." Also, "I charge you, gentlemen, that an adult can dispose of his property at any time and at any price he may choose to dispose of same, and by such disposition of his own property would not commit a fraud on his wife, though he be a married man, and believed at the time of such disposition of his property that he would not live long." Also, "Gentlemen of the jury, I charge you that in the deeds executed by T. E. Phillips to F. P. Phillips, the defendant in this case, that there is one consideration stated in the deeds known in law as a condition subsequent—which is to say, that one of the considerations in the deeds

is that F. P. Phillips is to pay all living expenses of T. E. Phillips throughout the balance of the life of T. E. Phillips, and at the death of T. E. Phillips F. P. Phillips is to expend the sum of five hundred dollars as funeral expenses. I charge you, gentlemen, that this is a valid and binding consideration, and that this consideration alone passed the title to the land described in the deeds to F. P. Phillips, provided you believe from the evidence in this case that at the time of the making and signing of the deeds on February 12th, 1924, that T. E. Phillips was mentally capacitated to make a contract as to his living expenses for so long as he might live, and for his funeral expenses after death, as stated in the deeds it is charged and admitted were made by T. E. Phillips in his life and delivered to F. P. Phillips, the defendant in this case." These requests were not properly adjusted to the pleadings. The basis of the plaintiff's petition was undue influence and coercion upon the plaintiff's husband, of such a character as to render void the judgment and deeds that were sought to be canceled, and therefore to leave the property vested in the estate of plaintiff's husband, unincumbered by the judgment and descending to the plaintiff as sole heir at law.

11. The court charged: "I charge you, gentlemen of the jury, that it would make no difference in law what induced a party to marry. If they were legally married, what induces the parties thereto to the consummation of the marriage does not affect their marital rights." One of the means alleged in the petition by which the defendant acquired control over the plaintiff's husband was false statements as to the motives with which the plaintiff married her husband. This charge had reference to that matter. It was not calculated to injure the defendant.

As the foregoing rulings will result in a reversal of the judgment refusing a new trial, no ruling will be made on the sufficiency of the evidence to support the verdict.

*Judgment reversed. All the Justices concur, except Hill, J., absent on account of illness.*

RUSSELL, C. J., concurs specially.