*J. L. Mayson* and *C. S. Winn,* for defendant.

---

### NICHOLS *et al. v.* LANIER.

1. The motion to dismiss the writ of error, on the ground that the questions involved in the case have become moot, is without merit.
2. "Where a party has been induced to enter into and sign a written contract by false and fraudulent representations as to its contents, made by the opposite party, which were intended to deceive and did deceive the party signing it, the latter may set up this fraud as a defense to an action against him upon the contract."
3. Applying the principles above ruled to this case it was error to strike the answer filed by the defendant, and to enter judgment against him.

No. 5609. MAY 7, 1927. REHEARING DENIED JULY 29, 1927.

Equitable petition. Before Judge Stark. Barrow superior court. May 28, 1926.

*J. D. Quillian,* for plaintiffs in error. *J. C. Pratt,* contra.

HILL, J. J. L. Lanier filed an equitable petition against J. W. Nichols and Mrs. Jessie Nichols, and alleged that J. W. Nichols was indebted to him on a certain promissory note in the sum of $1450, dated December 18, 1924, and containing an assignment of Nichols' homestead and exemption rights, a power of attorney to said Lanier to claim exemption rights for Nichols, etc.; that Nichols went into bankruptcy, and on February 7, 1925, the referee in bankruptcy set aside to him as an exemption certain property;

---

Appeal and Error, 4 C. J. p. 577, n. 88.

Contracts, 13 C. J. p. 383, n. 40; p. 393, n. 99; p. 396, n. 28.

Fraud, 26 C. J. p. 1087, n. 41; p. 1157, n. 41; p. 1158, n. 56.

and that the exemption was assigned by Nichols to his wife, Mrs. Jessie Nichols, on the same day that it was set aside. The plaintiff prayed for a judgment in rem against the property, a receiver to take charge of it, and an injunction against both Nichols and Mrs. Nichols to restrain them from disposing of it. J. W. Nichols and Mrs. Nichols filed an answer denying the material allegations of the petition, except the allegation as to residence, setting up that the assignment to Mrs. Nichols of the exempted property was not a voluntary conveyance, but made upon a fair consideration in payment of a debt due to Mrs. Nichols by J. W. Nichols; and further, that the signing of the note by Nichols to Lanier was not his act or deed, that he did not execute the same, authorize any one to execute it for him, or ratify it; that he did affix his signature to some note at the request and under the instructions of the attorney at law for the plaintiff, but he did not know and is unable to say whether this is the same note; and that his signature was obtained fraudulently by the attorney for plaintiff, and for this reason he is not bound by its conditions and terms. The court, on demurrer, struck the answer for insufficiency, and to this judgment the defendant excepted.

In addition to what is set out in the foregoing statement, J. W. Nichols specifically averred that "the said attorney (who was not the present attorney, J. C. Pratt, attorney for the movant), then and there acting as attorney for plaintiff, and this defendant, met in the office of the said attorney for the purpose of drawing another bill of sale, to secure the debt of this defendant, and also a note for said amount. It was distinctly understood and agreed between plaintiff and this defendant that the said debt, which was to be evidenced by a plain promissory note, of the kind that was generally used in Winder at that time, viz., a note containing a simple promise to pay the amount of the debt, waiving homestead and exemption rights and containing a stipulation for attorney's fees, but containing no mortgage, assignment, bill of sale, or other conditions. The bill of sale was prepared, and contained none of the articles lately set aside to this defendant as a homestead, and described in the plaintiff's petition, but only all the physical assets of the business known as the Winder Marble & Granite Works, which were the only articles which were, under an express oral agreement and understanding, to be conveyed to secure the said

debt, the said debt being the only debt owing by this defendant to plaintiff. The bill of sale was satisfactory, and was signed by this defendant. Then the said attorney for plaintiff drew a note and proffered it to this defendant for his signature. This defendant picked up the note and started to read it; whereupon the said attorney said that there was no need for this defendant to read the note, but that it was a mere note of the kind that had been agreed upon, that is, a simple promise to pay, waiving, but not conveying or assigning, homestead, and containing a stipulation for the payment of attorney's fees. The said attorney added that he wished that this defendant would just sign the note and close the matter, as he was in a hurry to get to a lodge of which he was secretary, and that it was important that he not be late, and that if this defendant stopped to read the note he would surely cause him to be late. Whereupon this defendant told plaintiff and said attorney that he had rather read the note, and have its terms explained to him, but that in order to accommodate plaintiff and his attorney he would sign the note if it contained nothing except a simple promise to pay. To this the said attorney and plaintiff assured this defendant that the said note contained nothing except a simple promise to pay. Whereupon this defendant, relying upon and believing said representations to be true, acted upon said representations and signed the note. Defendant says that immediately after he signed the same, the said attorney and the plaintiff hurried out of the office without again mentioning or giving this defendant any opportunity to read the said note." The defendant further averred that he had known the attorney practically all of his life, that they had always been close friends and had had business transactions extending over a period of years, and that the attorney had always acted uprightly and honestly and in such a manner as to inspire the utmost confidence in the defendant, etc.

Under these averments we are of the opinion that the court erred in striking the answer of the defendants. In *Wood* v. *Cincinnati Safe & Lock Co.*, 96 *Ga.* 120 (22 S. E. 909), this court held: "Where a party has been induced to enter into and sign a written contract by false and fraudulent representations as to its contents, made by the opposite party, which were intended to deceive and did deceive the party signing it, the latter may set up this fraud as a defense to an action against him upon the contract.

. . Under the ruling above announced, it was error to strike the plea filed by the defendant in the present case." The facts of the *Wood* case and of the present case are very similar. There it was averred in the answer of the defendant that "the contract sued on was procured from the defendant by fraud, and should not be enforced by the court; neither should this defendant be held liable on the same. For defendant showeth, that the agent of the plaintiffs, who procured said contract, came to defendant's store on the 10th day of June, 1891, and tried to sell defendant a safe. Defendant declined to buy a safe. Said agent remained in the store of defendant for a long while, endeavoring to get defendant's order for a safe, but defendant repeatedly and persistently refused to buy a safe. Finally said agent said to defendant, 'I am going to take your order for a safe, and if I do not hear from you before September 1st, we will ship it. Now, any time before that date, if you find you do not want it, write to us, and we will not ship it.' To this, defendant replied, 'All right.' In a few minutes said agent went back to defendant's desk and began writing. Said agent asked defendant what time the train went up. Defendant told him, and said agent asked defendant for a ticket. Defendant is the railroad agent. Defendant sold the agent a ticket, and said agent continued to write, defendant returning to the front of the store. In a few minutes the train arrived, when said agent called defendant and said, 'Please sign this,' holding up a paper. Defendant said, 'What is it? let me read it.' Said agent replied, 'It is only an agreement that if you take the safe, it is to be ours until paid for. You have not time to read it. I will send you a duplicate to-morrow. I have told you all that is in it. Sign it; I have to catch that train.' Relying on the representations of what the said agent of said plaintiff said and represented, defendant signed the said paper. Defendant further says that said agent did not send him a copy of said paper as agreed. Defendant, some time after said date, had, long before the first day of September, wrote plaintiff not to ship the safe until they heard from him under the agreement with said agent. Defendant says he had no opportunity to read said paper, that said agent would not allow him to read the same; that said agent by his conduct and manner acted and practiced a fraud on the defendant in procuring his signature to said contract, and the same is not therefore binding

on him; that, in pursuance of said agreement made with said agent, he wrote and notified said plaintiffs that he did not want said safe, and so notified them before they shipped the same; and said safe had never been accepted or received by the defendant, and he should not be held to pay for the same. But for the fraud practiced by the said agent, this defendant would not have signed said contract, and said contract does not represent the agreement between said agent and this defendant." The court in that case after striking the defendant's special plea directed a verdict for the plaintiffs. In reversing the judgment of the court below, Justice Atkinson, in delivering the opinion of this court, said: "Whatever may be the rights of third persons, it is a rule of law of universal acceptance, that as between the original parties thereto, fraud in its procurement voids a contract, and this upon the theory that the consent of the parties being necessary to the binding force of a contract, if one, apparently consenting by the execution of a written contract, can show that he did not in fact consent to its terms as therein expressed, but that his apparent consent was induced by false and fraudulent practices, by means of which he was overreached by the other party, and, without negligence upon his own part, really deceived as to the terms of the contract, he would be entitled to be relieved from its apparent obligations. A negligent omission to inform himself as to the truth of the representations when he had an opportunity so to do, or might, by the exercise of reasonable diligence, have done, would amount to a waiver upon his part, and he would thereafter be estopped to impeach the contract upon grounds against which the exercise of reasonable care would, in the first instance, have protected him. Fraud is exceedingly subtle in its nature. There are infinite means by which it can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by willful misrepresentations made by one person to another, with design to mislead and which do actually mislead another. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud," etc. And see, to the same effect, *Georgia Cotton Growers Co-operative Asso. v. Smith,* 163 *Ga.* 761 (137 S. E. 233).

In the instant case, according to the averments of the answer, the attorney for the plaintiff and the defendant had been close personal friends through a number of years, and he had learned to rely upon him as an upright, conscientious man; and here there was an emergency created by the attorney representing the plaintiff when he insisted that he had to meet an engagement, and that the defendant would not have time to read the contract, although the latter insisted on doing so, thus inducing him to sign the contract without reading it, on the faith of the statements of the attorney that it was a simple promissory note only obligating the defendant to pay the amount of principal, interest, and attorneys' fees. In these circumstances a court of equity will relieve the maker of a note from being bound by its terms and conditions, which he never knowingly signed, on account of the fraudulent representations of the other party to the contract. We are of the opinion that the court erred in striking the answer of the defendant, and that the issue made by the petition and answer should be passed upon by a jury as to whether the facts averred in the answer be true or not.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Gilbert, J., who dissent.*