1. This was a suit to enjoin eviction of the plaintiff under a dispossessory warrant issued against him as a tenant holding over. It was agreed upon the trial that the only issue for determination was whether the relation of landlord and tenant existed between the plaintiff and the defendant company at the time the warrant was issued; it being contended by the plaintiff that the contract on which the relationship depended was procured by fraud and duress on the part of that defendant, which contended that the plaintiff had read and understood the terms of the contract, and that it was executed freely and voluntarily *Page 644 
by him. On examination of the pleadings and the evidence, held that there were issues of fact which should have been submitted to the jury, and therefore that the court erred in directing a verdict in favor of the defendant, and in thereafter overruling the plaintiff's motion for a new trial. Georgia Cotton Growers Co-operative Association v. Smith, 163 Ga. 761 (137 S.E. 233); Smith v. Coker, 110 Ga. 654
(2) (36 S.E. 107); Whitt v. Blount, 124 Ga. 671 (2) (53 S.E. 205). The case differs in material respects from Lewis v. Foy, 189 Ga. 596 (6 S.E.2d 788), and Lee
v. Loveland, 43 Ga. App. 5 (2) (157 S.E. 707).
2. The evidence did not demand a finding that any payments were made by the plaintiff after discovery of the alleged fraud; and hence the defendant was not entitled, as a matter of law, to a verdict on the theory of waiver or ratification. Contrast Monk v. Holden, 186 Ga. 549 (2) (198 S.E. 697).
Judgment reversed. All the Justices concur, except Reid, C. J., and Duckworth, J., who dissent.
 No. 13263. JULY 13, 1940.
The question in this case is whether the court erred in directing a verdict in favor of the defendants. Jefferson Mortgage Company sued out a dispossessory warrant against H. H. Kent as a tenant holding over after expiration of his term. The warrant was issued from the municipal court of Atlanta. After being informed by the deputy marshal that he would be evicted within three days "unless satisfactory arrangements" were made with the company in the meantime, Kent filed a suit in equity to enjoin his eviction under the warrant, and for other equitable relief. The defendants in this equity suit were the Jefferson Mortgage Company, J. M. George, marshal, and R. O. Walters, deputy marshal, of the municipal court. The plaintiff's petition was later amended. An answer was filed only by the mortgage company. After introduction of evidence by both sides, the court directed a verdict in favor of the defendant. The plaintiff moved for a new trial on the general grounds, and assigned error on the direction of the verdict.
The petition as amended alleged the following: In August, 1928, the plaintiff borrowed from Investors Syndicate $4000, to be repaid in monthly installments of $40, including principal and interest at the rate of seven per cent. per annum. To secure this loan, the plaintiff executed a security deed conveying to Investors Syndicate the property in question, with power of sale. The loan was obtained through the Jefferson Mortgage Company, as agent *Page 645 
of the lender. The property was later sold under the power of sale; and this sale was alleged to be irregular, for several reasons. The plaintiff alleged, among other things, that the loan was infected with usury, and that after deducting interest as forfeited and crediting all payments, he owed Investors Syndicate nothing, and for this reason the sale was void. The petition contained numerous other allegations in reference to this sale and other matters, and alleged that there was no relation of landlord and tenant between the plaintiff and the mortgage company at the instance of which the warrant was issued. On the trial it was agreed by the parties that the only issue for determination was whether such relation did exist between these parties, at the time the warrant was issued.
The mortgage company relied on what appeared to be a rental contract between that company as landlord and Kent as tenant, signed by the parties on July 5, 1934, in which the property was rented to Kent for the period of one month for $40. This agreement was attacked by the plaintiff by pleading and evidence, on the ground of fraud and duress on the part of the mortgage company through its agent, D. W. Watson, who signed the contract as manager for the company. The plaintiff contended that after the sale under the security deed he went to the office of the Jefferson Mortgage Company in Atlanta, through which the original loan had been obtained, to see about renewing the loan or redeeming the property, at which time he signed what he thought was an agreement to pay the Investor's Syndicate $40 per month, and that he did not intend to sign and did not know that he was signing a contract of rental as between him and the Jefferson Mortgage Company.
In paragraph 10 of the amendment to the petition, it was alleged: "After talking a while with Mr. Watson, he, Watson, agreed that petitioner could sign a paper to pay Investors Syndicate $40 per month as rent, and that if he did not pay they would evict him from the premises and his home. That was about 6 p. m. in the afternoon. Petitioner agreed to this. Mr. Watson prepared the papers and handed them to petitioner and told him to sign it." The petition contained no averment indicating an intention to sign an agreement of any kind as between Kent and Jefferson Mortgage Company, creating the relation of landlord and tenant or other relation as between himself and that company. Regarding *Page 646 
the circumstances under which he signed the contract relied on by the mortgage company, the plaintiff testified as follows:
"No, I never did rent the premises from the Jefferson Mortgage Company. Yes, I learned that something had happened in regard to my loan with the Investors Syndicate. I came up to see Mr. Watson of the Investors Syndicate about it. I went up to see him about renewing the loan, and he said he would if I would sign a contract to pay the Investors Syndicate $40 a month, and he went ahead and fixed the papers up, and I signed the papers, the contract to pay the Investors Syndicate $40 a month. Mr. Smith witnessed the paper. I asked him to let me read it, and he said he didn't have time, that he was closing the office at six o'clock, and he had to go home, that it was a contract to pay the Investors Syndicate $40 a month, and if I didn't want to sign it he would throw me out the next day. I signed it. No, I did not read it, because he would not let me read it. Mr. Watson and Mr. Smith and myself were present when that transaction took place; nobody else. Mr. Smith witnessed the paper. There was not any discussion there about the Jefferson Mortgage Company. There wasn't anything said about renting the premises from them, or anything else. Yes, he said he would throw me out the next day if I didn't sign that paper. Yes, he was in a hurry. No, there wasn't any copy of the paper given me at that time. I learned that it was a lease to the Jefferson Mortgage Company when they took out that dispossessory warrant and had a trial down in the court. They produced it there, they produced that lease in the trial before Judge Moore of the Investors Syndicate case; that was the first I ever heard of it. . . No, I never paid any rent under this contract. I never made any payment of rent at all after I signed that contract. I did make payments to the Investors Syndicate on the contract to pay on the loan. Yes, they threatened me when I signed this instrument. Mr. Watson told me if I didn't sign it, he would throw me out the next day. Yes, Mr. Watson told me then that the property had been sold and the loan had been foreclosed, and that the title was in the Investors Syndicate. He did not tell me that if I wanted to stay there I would have to pay rent. As to whether or not he told me that he had the title and was taking possession, he told me it had been sold. I went up there to get it renewed, and he said: `Pay $40 a month on this loan to the Investors Syndicate.' *Page 647 
Yes, he did tell me the loan had been foreclosed, and that he was going to put me out the next day if I didn't sign that contract. Yes, this is my signature, but I didn't sign any contract. I didn't intend to sign any contract to pay rent. No, there were no other threats of any kind; what else could he do? No, he did not threaten my life or my limb. He just said if I didn't sign that contract he would throw me out the next day. I think the rent had been in arrears then a couple of months, or something like that. I don't remember just exactly."
Malberry Smith, a witness for the plaintiff, testified as follows: "I went up to the office of the Jefferson Mortgage Company in the Standard Building in Atlanta, several times. I negotiated with Mr. Watson to begin with; it seemed that he and Mr. Kent were kind of at outs, and I went up and talked to Mr. Watson about it, and he told me to bring Mr. Kent up there, and I carried Mr. Kent with me a few days later, one evening; . . it was after Mr. Kent got off from work. There is Mr. Kent's signature to that paper, and my recollection is that I witnessed it as a notary public. No, I did not hear anything about the Jefferson Mortgage Company up there when this paper was signed; all this discussion seemed to be between the Investors Syndicate; my understanding at that time was that the Investors Syndicate was a successor or something to the Jefferson Mortgage Company, and they were handling this thing. I don't remember much of anything being said about the Jefferson Mortgage [Company], it was all the Investors Syndicate. As to whether or not I recall Mr. Kent starting to read the paper at that time, it is my recollection that Mr. Watson handed me the paper, and there was some confusion, there was a lady there, she was a notary public or something, everybody else had gone, and I said: `I am a notary, I will witness it whatever it is.' And they said it was a contract of some kind. He said he had the paper, and he handed it to me, and I just glanced at it and handed it to Mr. Kent and told Mr. Kent he would have to sign it or they were going to put him out. And Mr. Watson said: `Yes, you sign it and get away; it is getting late,' or words to that effect. Mr. Kent started to read the paper, and Mr. Watson stopped him from reading it, and said: `Go ahead and sign it.' There were no physical threats or anything of that kind. Mr. Watson just told him he would have to sign that paper *Page 648 
or he would throw him out, he said that several times, and I told Mr. Kent that, too. Mr. Watson said he was in a hurry; we were all in a hurry to get out; it was late in the afternoon. As to whether or not Mr. Watson said anything about wanting to go home, he did say he wanted to get out and go. Yes, I know that he did stop Mr. Kent from reading the paper. . . Yes, Mr. Watson told him the loan had been foreclosed. Yes, he fully understood that the loan had been foreclosed. As to his having understood that Mr. Watson's principal was pushing him to get possession of the house, Mr. Watson told him something had to be done about it. There was never very much talk about it; he told us the loan company didn't care so much about the property, but they wanted the money or the property one, but they wanted the money first, they would rather have the money. No, Mr. Watson didn't frighten me. As to my having advised Mr. Kent that Mr. Watson was right, I advised him there had to be something done. Certainly Mr. Kent knew what it was. As to Mr. Kent having known that he was signing a lease, we all went through it with Mr. Kent, and he understood that the $40 a month that he had been paying was to apply on the loan if he received it, and we were going to fix it up. A few days later I went to Mr. Candler's office to see him, and stayed over there from about eleven o'clock until one-thirty, and did not get to see him. I don't know whether he was there, or not. As to whether or not I knew that that was a lease contract, I didn't read it. I knew it was an agreement for Mr. Kent to redeem the property or do something about it, that that had to be signed or he had to get out. . . No, there wasn't anything said about the Jefferson Mortgage Company had been absorbed by the Investors Syndicate, or something."
D. W. Watson, as a witness for the defendant, testified, that there was no fraud or duress as claimed by the plaintiff, but that he "told Mr. Kent he was signing a lease to the Jefferson Mortgage Company, and he read the paper;" that the Jefferson Mortgage Company was the agent of the Investors Syndicate; and that he took "that paper in the name of the Jefferson Mortgage Company because that was our usual custom in taking leases." His testimony in regard to custom was corroborated by that of another real-estate agent, a witness for the defendant.