McKAIG *et al. v.* HARDY, receiver.

No. 14628.   SEPTEMBER 13, 1943.

*Rosser & Rosser* and *Julius Rink,* for plaintiffs in error.
*McClure, Hale & McClure* and *Gleason & Painter,* contra.

ATKINSON, Justice. (After stating the foregoing facts.)

The first question for decision is whether the court erred in sustaining a demurrer to the fifth paragraph of the defendants' answer set forth above, which was in defense to the execution of the deed dated March 25, 1925, and recorded March 27, 1925. "Fraud will authorize equity to annul conveyances, however solemnly executed, and to relieve against awards, judgments, and decrees obtained by imposition." Code, § 37-709. "Great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain, may justify equity in setting aside a sale or other contract." § 37-710. "Whatever may be the rights of third persons, it is a rule of law of universal acceptance, that, as between the original parties thereto, fraud in its procurement voids a contract, and this upon the theory that, the consent of the parties being necessary to the binding force of a contract, if one, apparently consenting by the execution of a written contract, can show that he did not in fact consent to its terms as therein expressed, but that his apparent consent was induced by false and fraudulent practices, by means of which he was overreached by the other party, and, without negligence upon his own part, really deceived as to the terms of the contract, he would be entitled to be relieved from its apparent obligations. . . Fraud is exceedingly subtle in its nature. There are infinite means by which it

can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by willful misrepresentations made by one person to another, with a design to mislead and which do actually mislead another. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud." *Wood* v. *Cincinnati Safe & Lock Co.*, 96 *Ga.* 120 (22 S. E. 909). See *Georgia Cotton Growers Co-Operative Association* v. *Smith*, 163 *Ga.* 761 (137 S. E. 233) ; *Nichols* v. *Lanier*, 164 *Ga.* 445 (2) '(139 S. E. 2) ; *Williams* v. *Toomey*, 173 *Ga.* 199 (159 S. E. 866) ; *Kent* v. *Jefferson Mortgage Co.*, 190 *Ga.* 643 (10 S. E. 2d, 37). The facts in *Chestnut* v. *Weekes*, 183 *Ga.* 367 (188 S. E. 714), were somewhat similar to those of the instant case. It was alleged that the husband of a grantee in a deed administered a drug to the grantor for the purpose of destroying her mind and, having so done, held grantor's hand and traced her name to the deed. This court said that in the circumstances the signing of the name of the grantor would not be her act, and would be void and insufficient to convey legal title. While it is true that the defendant in the case at bar did not aver that he saw Newsom, the plaintiff's predecessor, mix the drink, or that Newsom delivered the drink to him, facts may be proved by circumstantial as well as by direct evidence. The averments in paragraph 5 of the answer did connect Newsom, to the extent that he invited defendant to ride in the automobile. Newsom was in the filling-station when the drink was served. Newsom drove defendant to Chattanooga, where according to the record, defendant executed a quitclaim deed in consideration of one dollar, conveying to Newsom land worth $750. Regardless of what affected the defendant's mind, the vendee in driving him to Chattanooga had the opportunity of observing his condition.

Where a party at the time of entering into a contract or executing an instrument is intoxicated to such a degree as to deprive him of his reason and to disqualify his mind to apprehend the nature of his act and its probable consequences, a court of equity may grant relief by rescission and cancellation. Equity will grant relief where the transfer of a valuable property has been fraudulently extorted, for a grossly inadequate consideration, from a per-

son while in such a state of intoxication as to render him incapable of transacting business. Where, as in the instant case, it is alleged that the intoxication was produced by the act or connivance of the person against whom the relief is sought, it set up a valid defense and should not have been stricken on demurrer. Code, § 20-207; *Neal* v. *Neal*, 153 *Ga.* 276 (111 S. E. 903); *Phillips* v. *Phillips*, 163 *Ga.* 899 (137 S. E. 561); *Bing* v. *Bank of Kingston*, 5 *Ga. App.* 578 (63 S. E. 652); Thackrah *v.* Haas, 119 U. S. 499 (7 Sup. Ct. 311, 30 L. ed. 486); 9 C. J. 1178; 9 Am. Jur. 364; 12 C. J. S. 976; 36 A. L. R. 619; 54 L. R. A. 440; 2 L. R. A. (N. S.) 667; 17 L. R. A. (N. S.) 1067; 25 L. R. A. (N. S.) 596; 8 Ann. Cas. 254.

■ Nor was the error in striking paragraph 5 of the answer corrected by permitting the defendant to testify in support of his defense set up therein, before the court directed the verdict for the plaintiff. The admission of testimony in support of a defense, after the portion of the answer containing the defense had been stricken, amounted to nothing, as the testimony was then without pleading to support it. Testimony not based upon pleading could not have availed the defendant anything, as a charge of the court (if the case had been submitted to the jury) on a defense which had been stricken would not have been appropriate. *Martin* v. *Nichols,* 127 *Ga.* 705 (56 S. E. 995); *Cordele Sash, Door & Lumber Co.* v. *Wilson Lumber Co.,* 129 *Ga.* 290 (58 S. E. 860); *Hewitt* v. *Lamb,* 130 *Ga.* 709 (61 S. E. 716, 14 Ann. Cas. 800); *McLean* v. *Mann,* 148 *Ga.* 114 (95 S. E. 985); *City of Brunswick* v. *Glogauer,* 158 *Ga.* 792 (124 S. E. 787); *York* v. *Stonecypher,* 181 *Ga.* 435 (182 S. E. 605).

■ In their answer the defendants admitted that the quitclaim deed dated September 25, 1925, was recorded on September 27, 1925; but they alleged that none of them had knowledge that such deed was in existence, or on record, until after the filing of the instant suit in August 1941. They alleged further that they had in good faith placed building improvements upon the property; and they prayed, should the quitclaim deed be held valid, that they be allowed to recover for the permanent improvements so placed. "In all actions for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed

thereon by himself or other bona fide claimants under whom he claims; and in case the legal title to the land is found to be in the plaintiff, if the value of such improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of the improvements over the mesne profits." Code, § 33-107. It is insisted that the defendants are estopped, because of constructive notice afforded by record of the quitclaim deed. In *Harper* v. *Durden,* 177 *Ga.* 216 (170 S. E. 45), this court held: "The court did not err in submitting to the jury the question whether under the evidence the defendant could set off the value of permanent improvements as provided in" the Code, § 33-107. It was said: "Constructive notice is evidence, as a matter of course. In a contest between deeds involving merely title, it would be conclusive. [Citing the Code, § 29-401] However, that Code section does not purport to deal with the question of bona fides where an occupant of land is seeking to set off permanent improvements. The burden on this question is on the party asserting notice. . . We hold that the record of the deed afforded constructive notice, which is relevant evidence, and, though conclusive on the matter of title, was not necessarily conclusive on the question of good faith." See generally *Norris* v. *Richardson,* 151 *Ga.* 31 (2) (105 S. E. 493) ; *Walton* v. *Sikes,* 165 *Ga.* 422 (14) (141 S. E. 188) ; *Burden* v. *Gates,* 188 *Ga.* 284 (3 S. E. 2d, 679) ; *Tennessee, Alabama & Georgia Railway Co.* v. *Zugar,* 193 *Ga.* 386, 389 (18 S. E. 2d, 758). Under the pleadings in the instant case the court erred in refusing to submit to the jury the question whether under the evidence the defendant could set off the value of permanent improvements, as provided in § 33-107.

■ While it appears from the record that the Georgia Minerals Company, on October 18, 1923, executed a deed to B. W. Newsom to the land in question together with other lands, and that Newsom in turn executed to that company a security deed conveying the same property on October 23, 1923, and that this security deed had been assigned by that company to another person, still, when these deeds were introduced in evidence it was stipulated, in reference to the deed from the Georgia Minerals Company to B. W. Newsom: "This deed being introduced simply to show that the

land involved in the suit was a part of the land included in the receivership, although plaintiff was not relying on this deed as any basis of his right, but was claiming the full right under the deed from Drew G. McKaig." Under such circumstances only the rights of the parties under the quitclaim deed from McKaig to Newsom were involved.

■ Applying the rulings announced above, there were issues of fact that should have been submitted to the jury. The court erred in directing the verdict in favor of the plaintiff.

*Judgment reversed. All the Justices concur, except*

DUCKWORTH, JUSTICE, dissenting. In *Threlkeld* v. *Dobbins,* 45 *Ga.* 144, 146, it was said: "It is the duty of a defendant to state his case, and the court will not strain a point to make it out for him. We take it for granted he has gone as far in his statement as his conscience will let him; and so treating his plea, we think the court was right in striking it." The foregoing is but an application of the recognized rule that pleadings are to be construed most strongly against the pleader. In *Doyal* v. *Russell,* 183 *Ga.* 518 (3, 4), 534 (189 S. E. 32), it was held that where pleadings are ambiguous or couched in alternative expressions, on demurrer they will be given that construction which is most unfavorable to the pleader. The pleading there referred to alleged that the defendant would illegally pay out funds under a proclamation or otherwise in violation of law, unless restrained. In the opinion, in discussing this alternative allegation, it was said: "Where any one of several averments alleged in the alternative is insufficient, the entire pleading is rendered bad. In other words, where two matters are pleaded in the disjunctive, one of which is good and the other not, the petition is treated as pleading no more than the latter, because it must be construed most strongly against the pleader." The cases there cited amply support the quoted ruling. In *Ellis* v. *Lockett,* 100 *Ga.* 719 (28 S. E. 452), the suit was by the vendor for the purchase-money of land. The defendant attempted to set up as a defense by special plea that the vendor's title was bad; and it was said, that as "the pleas in question did not by their allegations affirmatively show such want of title, there was no error in striking them on demurrer." I think the foregoing decisions, which are in harmony with countless other decisions of this court, make it clear that a defendant's plea, when con-

strued on demurrer, can never legally be construed more favorably to the defendant than its language expresses. I think it means also that facts more favorable to the defendant's case than those pleaded do not exist; otherwise in the interest of his case the defendant would have alleged them.

Division 1 of the majority opinion reverses the judgment which sustained the plaintiff's demurrer to paragraph 5 of the amended plea. This paragraph details circumstances which might be sufficient in law to relieve the defendant from any act committed by him while in the condition there described; but the defendant was unwilling to allege that he executed the deed here involved while in that condition. The deed is dated September 25. Paragraph 5 of the plea alleges that on or about September 25 the transactions there recited took place. Under the ruling in *Doyal* v. *Russell,* supra, this alternative allegation must be construed to mean, not that on September 25, but *about* September 25, such matters transpired. In the nearest approach to an allegation that the deed was executed in the circumstances there recited it is alleged that "during this time he may have signed such deed." This statement, under the rule, means no more than that the defendant may have but did not sign the deed during the time there referred to; and hence paragraph 5 constituted no defense and no valid attack upon the deed in question, and it was properly stricken on demurrer. Since the entire case turned upon the validity of that deed, and since the defendant does not deny the execution of the deed, it was not error for the court to direct the verdict in favor of the plaintiff.

Of course, the plea of the defendant recites a number of facts which strongly indicate that he held possession of the premises in good faith, and the plea asserts that he did not know of the existence of the deed until this suit was brought; but these circumstances and this assertion were conclusively answered by the existence of the deed, properly executed and signed by the defendant, in the absence of a showing that the deed was for some legal reason invalid.