## 22736.  MURPHY v. HARDING et al.

Submitted November 10, 1964—Decided February 10, 1965.

*Otis L. Davis*, for plaintiff in error.

*Noland & Coney, J. E. Wilson*, contra.

Almand, Justice. Error is assigned on an order sustaining the separate general demurrers of the two defendants to a petition seeking legal and equitable relief.

■ The Motion to Dismiss. The defendant Harding has filed a motion to dismiss the writ of error on two grounds: (a) the bill of exceptions was not certified in the time provided by law and (b) his cross action seeking affirmative relief is pending in the trial court and hence there was no final judgment subject to review.

(a) The record discloses that the judgment complained of was entered on August 18, 1964; that the plaintiff tendered his bill of exceptions to the trial judge on August 18, 1964 and the bill of exceptions was signed by the trial judge on September 21, 1964. No reason appears in the certificate or the record for the delay in certification. The motion is supported by the unanimous rulings of this court in *Salyard v. Salyard*, 207 Ga. 619 (63 SE2d 398), *Moore v. Moore*, 215 Ga. 47 (108 SE2d 704), *Walton v. Chatham*, 215 Ga. 683 (113 SE2d 125), *Jarvis v. Risner*, 215 Ga. 684 (113 SE2d 126), and *Blalock v. Spiker*, 216 Ga. 510 (117 SE2d 528). Apparently, *Code* § 6-1312 was overlooked in rendering these decisions because it is not mentioned in any of them. That Code section provides: "No bill of exceptions shall be dismissed upon the ground that the same was not certified by the judge in the time required by law for tendering and signing bills of exceptions; but if it shall appear from the bills of exceptions that the same was tendered to the judge within the time required by law, a mere failure on his part to sign the same within the time prescribed shall be no cause for dismissal, unless it should appear that the failure to sign and certify the same by the presiding judge within the time

prescribed by law was caused by some act of the plaintiff in error or his counsel." That Code section is explicit in its terms: that no bill of exceptions shall be dismissed by this court where the bill of exceptions was tendered to the trial judge in the time required by law by the mere failure on his part to sign the bill in the time prescribed unless such failure to timely certify was caused by some act of the plaintiff in error or his counsel. Where previous decisions of this court are in conflict with a previous statutory enactment, to which no reference is made, such decisions will be rejected as authority, without the formality of reviewing and overruling them. "It being a choice between an Act of the legislature and a subsequently conflicting decision of the court, the Act of the legislature speaks with imperative and controlling authority and must be followed in preference to the judicial utterance in conflict therewith." *Central of Ga. R. Co. v. Jones*, 28 Ga. App. 258, 261 (110 SE 914). The above decisions, and others of like tenor, being in conflict with the statute (*Code* § 6-1312), are erroneous and will not be followed, and are hereby overruled.

This court in *Clay v. Floyd*, 208 Ga. 374 (66 SE2d 916) with two Justices dissenting held: "Where a bill of exceptions, on May 4, 1951, was presented for certification to the trial judge, who, for no cause specified or shown by the record, held the same until July 25, 1951, before certifying it, and counsel for the plaintiffs in error in the meantime made no effort to obtain a mandamus from this court to compel the judge sooner to certify the bill of exceptions, the writ of error will be dismissed." *Code* § 6-1312 was cited in the opinion with the statement: "In the case at bar no application was made to this court to require the judge to certify the tendered bill of exceptions, and we do not think that § 6-1312 of the Code, hereinbefore quoted, prohibits a dismissal of the writ of error when the bill of exceptions is presented in time, but held by the trial judge unsigned for an unreasonably long period of time with the express or tacit acquiescence of the plaintiff in error; and tacit acquiescence in the judge's failure to sign a bill of exceptions results from a failure of the plaintiff in error or his counsel to use the facilities of the law when the judge retains the bill of exceptions, for no

sufficient cause, after the time prescribed by law for its certification has expired." *Clay v. Floyd,* 208 Ga. 374, 377, supra. The ruling there was followed in *Amick v. Poteet,* 208 Ga. 674 (68 SE2d 903) with two Justices dissenting; in *Bostic v. Nesbitt,* 209 Ga. 159 (71 SE2d 213) with one Justice not participating; in *Gilbert v. Moody,* 209 Ga. 637 (74 SE2d 879) with one Justice dissenting and one Justice not participating and in *Gore v. Fite,* 220 Ga. 338 (138 SE2d 666) with two Justices concurring specially.

The record disclosing that the bill of exceptions in this case was tendered in the time provided by law, and not showing that the failure of the judge to certify it within the time prescribed by law was caused by some act of the plaintiff, it will not be dismissed. *Code* § 6-1312.

(b) The second ground of the motion to dismiss the bill of exceptions is that the case is still pending in the court below by reason of the defendant Harding's cross action. Though of merit when the motion was filed, this motion has been rendered without substance by verified facts, filed in this court and undenied by the defendant in error, that the trial court on December 1, 1964, sustained a demurrer to defendant in error's cross action and dismissed the same. This motion to dismiss is denied.

■ The petition of Sam A. Murphy sought a money judgment and equitable relief against Howard Harding and Mrs. Roy Baldy. He alleged: that he was a disabled war veteran and because of his nervous condition he was easily mentally disturbed by stimulating liquors or drugs; that in February, 1964, defendants were in charge of a cafe near Douglasville; that during February 1964, defendant Harding suggested to petitioner that he buy a half interest in said cafe, but petitioner informed Harding that he knew nothing about the cafe business and was not interested; that on or about the same day Harding served petitioner a cup of coffee which made him dizzy and petitioner could not think clearly or control the actions of his body, and that the state of dizziness continued for several days until petitioner was treated in Grady Hospital on March 7, 1964; that on or about February 27, 1964, while in the condition described above, petitioner entered into a purported contract with defendant Harding

to purchase the cafe and that petitioner paid Harding $2,200 as the purchase price of said cafe; that petitioner worked in the cafe for several days and "terminated his supposed interest in such cafe on or about March 4, 1964, by making a present, or gift of same, to defendant Baldy"; that petitioner has only a vague memory of some of the events which took place following his drinking the cup of coffee and that on one occasion the defendant Harding insisted that petitioner take a "red bird" in order to cure his dizziness, but petitioner refused to take said medicine; "that one or more of said defendants, repeatedly administered drugs of some sort in his food or drinks over a period of several days to destroy his mind and will power in order that they might perpetrate a fraud upon him"; that if petitioner did enter into an alleged contract with defendants to purchase said cafe and did later give the cafe to one of the defendants, at the time he was intoxicated by drugs to the extent that he was deprived of his reason and his ability to apprehend the nature and probable consequences of acts and "his actions while in such condition would be invalid and have no binding effects on petitioner"; that since recovering from the effect of the drugs petitioner has demanded that defendants return his money and do such other acts as necessary to restore him to the same position which he enjoyed before becoming involved with them, but defendants have refused to do so and have threatened petitioner with bodily harm if he makes any attempt to enforce his rights; that the reasonable market value of the cafe equipment is $200 and that petitioner has no property or funds of the defendants in his possession to offer to restore to them in order to place them in the position they were in before his alleged dealing with them and "there was never any inventory furnished him, but the equipment which defendant Harding pointed out to him was: an electrical refrigerator, the usual pots and pans used in the kitchen; a supply of dishes for serving food and a supply of knives, forks and spoons." The prayers were: for a money judgment against the defendants; a restraining order to bar the defendants from disposing of their properties and to declare any contracts made by plaintiff and the defendants to be null and void.

We are of the opinion that the general demurrer of the defendant Baldy was properly sustained, in that the allegations are insufficient to charge Mrs. Baldy with any specific act in administering drugs in his food or drink which rendered petitioner intoxicated so as to deprive him of his reason and disqualify his mind to apprehend the nature of his act. All of the specific allegations as to these acts relate only to the defendant Harding.

In *McKaig v. Hardy,* 196 Ga. 582, 586 (27 SE2d 11) the court held: "Where a party at the time of entering into a contract or executing an instrument is intoxicated to such a degree as to deprive him of his reason and to disqualify his mind to apprehend the nature of his act and its probable consequences, a court of equity may grant relief by rescission and cancellation. Equity will grant relief where the transfer of a valuable property has been fraudulently extorted, for a grossly inadequate consideration, from a person while in such a state of intoxication as to render him incapable of transacting business. Where, as in the instant case, it is alleged that the intoxication was produced by the act or connivance of the person against whom the relief is sought, it set up a valid defense and should not have been stricken on demurrer."

The amended petition was sufficient to allege, as against defendant Harding, some of the relief prayed for, and it was error to sustain his general demurrer.

*Judgment affirmed as to defendant Baldy; reversed as to defendant Harding. All the Justices concur.*